CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

v.

L. L. EMMONS, JR., FOR USE, ETC.

*Railroads—Negligence—Fire—Dry Grass and Weeds—Accord and Satisfaction—Insurance—Subrogation.*

C., B. & Q. R. R. Co. v. Emmons.

1.  Negligence is presumed where fire breaks out among dry grass and weeds upon the right of way of a railroad company immediately after a train passes.

2.  A person insured has the primary right to indemnity against a railroad company, sparks from one of whose engines caused destruction of property, or the insurance company, but if he first collects from the railroad company the entire amount of his loss, he can not have a second satisfaction of the insurance company.  If he first collects from the insurance company, he becomes the trustee in equity of the insurance company to the amount paid by it to him, and to such company is subrogated the right of the insured as against the wrongdoer, the railroad company, to the amount paid by the insurance company, on account of the loss against which it had insured.

3.  In such case the tort committed by the railroad company in destroying the property, in equity would be considered done to the insurance company in case it had the loss to satisfy to the insured, but the rights of the insurer must be enforced in the name of the insured, the owner of the property.

4.  The rule of law that prohibits the satisfaction of a claim by the legal payee, when it equitably belongs to another, is not confined to cases where there is litigation to enforce it, pending; but if litigation is pending, it is notice to the debtor that the nominal plaintiff had no right to release the claim without consideration.

.5.  In the case presented, this court holds that a party named had no right to compromise a fire loss with, and release a railroad company, through whose negligence the same occurred, so as to deprive the insurance company insuring the property destroyed, of the right to sue in the name of the insured for its use and recover the amount of the insurance.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Whiteside County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Mr. JOHN G. MANAHAN, for appellant.

In order to an intelligible determination of the applicability of subrogation, in any given instance, there must necessarily be a prior, clear understanding of what subrogation essentially is.  It had its origin, and has its chief application in matters arising *ex contractu,* and when transferred to matters arising in tort, the analogies must necessarily be preserved.  "It is substitution of another person in place of the creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt."  Sheldon on

Subrogation, Sec. 1; 2 Bouvier's Law Dic., and cases cited. "Being a doctrine of mere equity and benevolence, it will never be enforced at the expense of a legal right." Sheldon on Subrogation, Sec. 4. "And the party for whose benefit the doctrine of subrogation is exercised, can acquire no greater rights than those of the party for whom he is substituted; if the latter had not a right of recovery, the former can acquire none." Idem, Sec. 6, and cases cited. It has its inception only at the time of payment by the party desiring subrogation. Idem, Sec. 6, and cases cited. No one can become subrogated to a right, which the party originally possessing that right had previously contracted should not be enforced.

In Hartford Ins. Co. v. Pennell, 2 Ill. App. 600, Third District, Pennell, as the owner of the Normal Hotel, had it insured for $7,000. The hotel was destroyed by fire from the Chicago & Alton Railroad. The insurance companies paid the insurance to Pennell. The latter afterward obtained a judgment of $13,000 against the railroad company in the Circuit Court of McLean County for causing said fire. Pending the appeal of the railroad company to the Supreme Court, the insurance companies filed their bill against Pennell and the railroad company, alleging the insolvency of Pennell and asking an injunction against Pennell from collecting, and the railroad from paying him the portion of said judgment to the extent of the insurance paid by them. The Appellate Court granted the prayer of the bill. This latter decision can be justified only upon the hypothesis that the payment by the railroad company to Pennell would discharge the railroad's liability for the loss. In other words, when matters reached the stage where Pennell had no further claim against the railroad company, there would be nothing to which the insurance companies could be subrogated as against the railroad company.

In Niagara Fire Ins. Co. v. Fidelity, etc., 16 At. Rep. 790 (Pa.), it was held that such a release of the wrongdoer by the insured as would make the covenant of the insured in his policy of insurance to assign his remedies against the wrongdoer "either impossible or useless, would relieve the insur-

ance company from its concurrent covenant to pay." This recognizes the right of the insured to make such release, and the binding effect of such release upon the insurance company.

The case of Hart against the Western Railway Co., 13 Met. 99, is only apparently to the contrary, and merely denies the right of the nominal plaintiff to execute a release to the defendant, without consideration, *pendente lite*, and thus defeat the court after the action has been commenced, the court saying that they would "restrain and prohibit the assignor from defeating it (the action) by a release." This means, of course, when the release is made *lis pendens*.

In Monmouth Ins. Co. v. Hutchinson, 21 N. J. Eq. 107, it is said that a release given by the insured to the railroad company after the latter had knowledge that the insurance company had paid the insured, would be no defense in a suit by the insurance company against the railroad company, but that it would be essential for the insurance company to bring a bill in equity to have such release declared void as a fraud upon their rights.

But as before stated, the settlement in the case at bar preceded the payment by the insurance company, and the New Jersey case impliedly confesses the conclusiveness of a release even under the circumstances therein stated, until it shall have been declared inoperative by a court of equity.

In Trask v. Hartford & N. H. R. R. Co., 2 Allen, 331, it is said: "But since the subrogation of the insurers is only to the rights of the insured, and the action for a single tort is indivisible, a judgment against a railroad company for the destruction of one building by fire communicated from its locomotive engine, will bar another action in the name of the same plaintiff against the same defendant for the destruction of another building by fire communicated from the first building, although the second action is really brought and prosecuted for the benefit of an insurance company which has, upon one of its policies, paid the plaintiff for the loss of the second building." And a proper settlement and discharge of the entire cause of action will have the same effect as would a

judgment to preclude any further litigation of the subject-matter.

In Mobile, etc., R. R. Co. v. Jurey, 111 U. S. 584, the court says : " Although the suit is brought for the use of the insurer, and it is the sole party beneficially interested, yet its rights are to be worked out through the cause of action which the insured has against the common carrier."

The insurer succeeds merely to the right of the insured. Conn. Ins. Co. v. N. Y., etc., R. R. Co., 25 Conn. 265.

In Phenix Ins. Co. v. Erie, etc., Co., 117 U. S. 312, it is said : " But the insurer stands in no relation of contract or of privity with the persons causing the loss. The insurer's title arises out of the contract of insurance, and is derived from the assured alone, and can be enforced only in the right of the latter. In a court of common law it can be asserted only in his name; and even in a court of equity or admiralty, it can be asserted only in his right. In any form of remedy, the insurer can take nothing by subrogation but the rights of the assured.   *   *   *   The right of action against another person, the equitable interest in which passes to the insurer, being only that which the assured has, it follows that if the assured has no such right of action, none passes to the insurer; and that if the assured's right of action is limited or restricted by lawful contract between him and the persons sought to be made responsible for the loss, a suit by the insurer, in the right of the assured, is subject to like limitations or restriction."

The foregoing authorities necessarily establish the proposition that the insurance company in this case at no time had any cause of action in their own right against the railroad company.   The utmost the insurance company could be entitled to was, that if upon their payment to Emmons there remained any right of action in Emmons against the railroad company, the insurance company might be entitled, as between itself and Emmons, to an interest therein.   This was a matter wholly between Emmons and the insurance company.

Messrs. J. & J. DINSMOOR, for appellee.

By the payment of the $495 to Emmons, the insurance company became subrogated to the rights of Emmons to recover from appellant that sum of money. Honore v. Lamar Ins. Co., 51 Ill. 414; Hart v. Western R. R. Co., 13 Met. 99; Hall v. Nashville & C. R. R., 13 Wall. 367, 373; Ætna Fire Ins. Co. v. Tyler, 16 Wend. 385.

In this case Emmons is only the nominal plaintiff, and could not interfere to defeat the rights of his assignee in the prosecution of a suit to enforce its rights. The attempted settlement by the appellant with Emmons, after he had been paid by the insurance company, was a fraud on the rights of the insurance company, and was null and void. The act itself puts the appellant out of the pale of honorable business circles, and ranks it among the Peter Funks who conduct mock auctions in big cities. Welch v. Mandeville, 1 Wheat. 233.

The Niagara Ins. Co. v. Fidelity, 16 At. Rep., is cited. This was an action by the Fidelity & Trust Company, trustees, for use of Western University of Pennsylvania, v. The Niagara Fire Insurance Company, in a policy of insurance. There was judgment below, for want of a sufficient affidavit of defense. Defendant sued out a writ of error. This clause was in the policy: "When this company shall claim that the fire was caused by an act or omission of any person, the party to whom the loss is payable, under this policy, shall, on receiving payment, assign to this company such cause of action." *Held*, that the act of payment and assigning were dependent covenants, and that a performance by one party could not be compelled without either a performance, or an offer to perform, by the other. This is all that is decided in the case. There had been a " release " executed, but the court says, " It (release) is not before us."

The case of Garstairs v. Ins. Co., 18 Fed. Rep., simply decides this, as we understand: that when the insured has assigned his policy to an assignee, he can not maintain an action on it in his own name. The next case cited (Jackson Co. v. Boylston Ins. Co., Mass., 1885, cited Vol. 21 Am. Eng. R. R. 17,) is of a similar import. The insured had contracted with the carrier that it should have the benefit of all insurance he should effect

on the goods shipped, and of course he could not assign his policy away from the carrier.

The *dictum* from the opinion in Cin., H. & D. R. R. Co. v. Spratt, 2 Duv., cited by appellant's counsel, is unfortunately worded to express the intended meaning, which undoubtedly would be more clearly expressed by saying, " The party seeking subrogation must have first paid the sum sought to be recovered by the suit."

The case of Hartford Ins. Co. v. Pennell, 2 Ill. App. 609, simply shows this: that if Emmons had been paid by the insurance company, and was insolvent, and he afterward had sued the appellant in his own right for the full amount of his loss, the insurance company could obtain a restraining order on appellant from paying Emmons the sum which had already been paid him by the insurance company, and that sum would be paid to the insurance company in case of Emmons' recovery of full amount.

The citation from Niagara Ins. Co. v. Fidelity, 16 Atlantic Rep. 790, we can not see has any applicability to the case at bar.

LACEY, P. J.   This was an action on the case brought by appellee against the appellant to recover the value of certain property, real and personal, to the value of $1,400 or $1,500, consumed by fire originating on the appellant's right of way, along its railroad leading from Shabbona, in the State of Illinois, through Whiteside County to Rock Island in said State, the said declaration charging that the appellant failed to keep its right of way free from dry grass and weeds as required by the statute, but carelessly allowed the same to remain on its right of way, and through its negligence, fire was suffered to escape from the locomotive engine to said dry grass, weeds, etc., and from thence to the plaintiff's hay, straw, grain, barns, cribs, fences, granary and farming tools, etc., which were thereby consumed by fire, which was done on the 25th day of March, A. D. 1889.   The appellant pleaded three pleas to the declaration: first, the general issue; second, accord and satisfaction by the nominal plaintiff; and third, settlement and release of all

causes of action by the nominal plaintiff. The appellee replied to the said second and third pleas in substance, that prior to the committing of the said grievances in the declaration mentioned, the plaintiff applied to the Farmers Mutual Fire Ins. Co. to insure the goods, chattels, barns, cribs and granaries in said declaration mentioned, and long prior to the committing of the said grievances aforesaid, the said insurance company issued its policy of insurance to said nominal plaintiff, insuring thereby two-thirds the value of said goods and buildings against loss by fire, and on the 20th day of April, 1889, the said insurance company paid to the nominal plaintiff upon adjustment of the loss by fire, $495, and the same was received by appellee in full satisfaction of said loss, and that the defendant knew on the day and year in the said plea named, to wit, 6th day of May, A. D. 1889, that the said insurance company, in pursuance of the said insurance policy, paid to said appellee, Emmons, a large sum of money, to wit, $1,000, in full payment and satisfaction of said loss, by reason of the grievances named in the declaration, by which means the said insurance company had an equitable assignment of said claim of said Emmons on said defendant for said sum so paid as aforesaid by said insurance company to said Emmons. And any and all releases executed by said Emmons without authority of said insurance company were and are in fraud of said company, and this he is ready to testify. The appellant, besides general rejoinder to said replications, filed a special rejoinder setting up that it compromised the said cause of action with the said appellee, Emmons, on the 5th day of April, 1889, for the sum of $550, and afterward, on the 6th day of May, 1889, in pursuance of said agreement, appellant paid to appellee, Emmons, the said sum of money in pursuance of said agreement, etc. A demurrer was sustained to said special rejoinder.

Upon these issues a jury was waived and a trial had by the court, which found the issues in appellee's favor and assessed his damages at $495, and rendered judgment in appellee's favor thereon. Upon appellant's motion for a new trial being overruled, judgment was rendered on the finding. From this judgment this appeal is taken.

The first point raised by appellant is, that the evidence did not support the finding by the court as to the fact of the communication of the fire to the stubble and dry grass on appellant's right of way from the locomotive engine of appellant.

We think that, while the evidence was not positive, but circumstantial only, it, nevertheless, was abundantly sufficient to sustain the finding of the court. The evidence showed that directly after the appellant's locomotive and train of cars had passed, fire broke out on its right of way in the dry grass thereon. This we think was a sufficient circumstance, in connection with the other circumstances, to make out a *prima facie* case; and under the statute, when such fact is established, negligence is presumed.

The next and most important question in the case is, had the appellee, Emmons, under the circumstances, the legal right to compromise the case so as to deprive the insurance company, the usee herein, of the right to sue in the name of the insured for its use and recover the amount of the insurance.

It is not denied by appellant that the appellee's usee, the Farmers Mutual Fire Insurance Co., would have the right to all the money paid in by it to appellee Emmons to the extent of the insurance paid, provided Emmons received the entire amount of his loss from appellant, and the insurance company had paid the insurance money on the loss. The insured has the primary right to indemnity against either the appellant or the insurance company, and could collect of either; but if he first collected of the railroad company the entire amount of his loss, he could not have a second satisfaction of the insurance company; and if he first collected of the insurance company, then he became the trustee in equity of the insurance company to the amount paid by it to him, and the insurance company subrogated to the right of the insured as against the wrongdoer, the railroad company, which wrongfully caused the destruction of the property, to the amount paid by such insurance company on account of the loss against which it had insured. In such case the tort committed by the railroad company in destroying the property, in equity would be considered done to the former in case it had the losses to satisfy

to the insured, but the rights of the insurer must be enforced in the name of the insured, the owner of the property. And it was held in Hart v. Western Railway Co., 13 Met. 99, by Chief Justice Shaw, that such equity must be assigned by the insured, using the following language: " Where such an equity exists, the party holding the legal right is consequently bound to make an assignment in equity to the person entitled to the benefit, and if he fails to do so, the *cestui que trust* may sue in the name of the trustee, and his equitable interest will be protected."

It is contended by appellant's counsel, that the appellee, Emmons, had a legal right to release the claim against the appellant even without consideration, and after notice of the fact that the Farmers Mutual Fire Insurance Company had paid a portion of the loss, or had arranged to pay it. We do not think that the absolute right of the insured goes to that extent, or that of the appellant to accept such a boon. To allow this to be done would have the effect to violate the equitable rights of the Farmers Mutual Fire Insurance Company, the usee herein, in a most flagrant manner. The law, we apprehend, would not sanction such a wrong merely to satisfy some supposed technical right of the holder of a legal claim to satisfy it without consideration by release where it was well known by the party receiving satisfaction that such legal holder of the claim had no interest in it further than as a trustee in equity.

If the person or party receiving such satisfaction should pay the full amount of the claim to the legal holder it might be quite a different question; but such we do not understand to be the case here. The facts of the case at bar, as appears from the evidence, are about these, so far as the supposed release in question is concerned, to wit: The adjuster of appellant, on the 21st of April, 1889, went to appellee's premises, and according to the latter's evidence, which is undisputed, adjusted the claim for the loss occasioned by the fire with him, and the amount was fixed at $1,000, and appellee, Emmons, was instructed by the adjuster, Alexander, to first get the insurance, and whatever that was he would deduct from the amount of

$1,000. This was the offer. "First, he (the adjuster) says, 'You want to get your insurance money, and we will pay you the balance, whatever was agreed upon.' I (Emmons) asked him if that was the way they did business. He said 'Yes; you settle with the insurance company and we will settle with them.'" This offer was accepted, and the money, $505, paid afterward, to wit, on the 6th day of May, 1889, and a receipt taken by appellant from appellee in full of all demands and causes of actions, which receipt and settlement and payment is relied upon as being a complete bar to this action. On the 2d day of May, 1889, Mr. Hughes, the secretary and treasurer of the usee herein, met Mr. Thorne, the general superintendent of the division of the appellant, and had a conversation in regard to the matter, and he said to Thorne it was represented to him (Hughes) that the railroad company in such cases required the party having to collect his insurance to collect the same and they settle with the insurance company, and Hughes then said to Thorne, "If that is the case the money will be refunded to us" (the insurance company). "I have the money on hand and can pay Mr. Emmons so he can go on building;" and Mr. Thorne says, "That is my understanding." He was present at the time the adjuster was with Mr. Emmons and says, "That is my understanding of the matter." The money was then paid on the same day to appellee, Emmons, by the usee herein, to wit, $495."

But notwithstanding this arrangement with the insurance company, by its agent, Hughes, on the 6th May the appellant paid the amount coming to appellee, less the insurance money, and procured from him a release of all causes of action and claim, and now insists that it is released from paying the insurance money. The settlement was made with appellee on the basis of the $1,000, and appellant had full notice of the claim of the usee of $495, which it agreed to pay, but instead of that fraudulently took a release from Emmons in full, and insists that such release is binding on the usee, as well as Emmons. We hold besides, the natural equity which prevents the insured to satisfy the claim in full as against the insurer where he has notice of the payment of the loss by the insurer,

according to the facts of this case the appellant is estopped from taking a satisfaction piece of the insured so as to defeat the claim of the insurance company. By the promises and agreement made with the appellant, the claim of the usee herein was to be protected, and in view of that the insurance money was paid and the insurance company put in such position that it could make no defense in case Emmons wrongfully satisfied the entire claim and relieved the appellant. There is no question but the railroad company settled the loss caused by it for $1,000. There was no consideration for a full release by the insured to appellant of the claim, and we must hold that as to the insurance company, the taking of such release under the circumstances was fraudulent and void. There was no division of an indivisible claim as is contended in this case. The appellant paid a portion of it voluntarily, the amount of the loss in excess of the insurance money, and that left remaining due appellee to use of the usee herein, the sum of $495. The entire claim then remained due appellee for use of the insurance company, and in equity should be regarded as assigned. The rule of law that prohibits the satisfaction of a claim by the legal payee where it equitably belongs to another, is not confined, as we understand it, to cases where there is litigation to enforce it, pending, as is supposed to have been the case by counsel for appellant in Hart v. Western Ry. Co., 13 Met. 99. If there is litigation pending, that is notice to the debtor that the nominal plaintiff had no right to release the claim without consideration; but just as effectual notice existed in this case, as it was understood by the parties that the usee was to be protected in case it paid the insurance money.

The point made that the appellant's rejoinder was wrongfully held bad in the court below on demurrer, is not well taken. This rejoinder set up a prior contract made on April 5th, between appellant and Emmons, to release it from further liability on account of the loss on the payment of $550, and that money was paid in pursuance thereof on May 6th. This rejoinder was a departure from the pleading, and besides, the appellant had the full benefit of its proof in that respect under

the general issue. The supposed contract of April 5, 1889, when produced, only shows an offer on appellee's part, unaccepted by appellant. The adjustment for the $1,000 took place afterward, and the arrangement with the insurance company was on May 2d, before any payment, and no notice was given to the insurance company of any agreement of the kind. The proof fails to show any facts that would put appellant in any more favorable position on account of the supposed contract of April 5, 1889.

After an examination of the entire record we are unable to see any substantial merit in appellant's case. When it pays this judgment it has only paid what in equity and good conscience it should pay. It has only paid on account of the loss what it agreed to pay, viz., $1,000, and when this payment is made it will go to the party equitably entitled to it, that is, the party who advanced it for the appellant. We see no merit in the mere technical points without substantial equity made by the appellant. The judgment will therefore be affirmed.

*Judgment affirmed.*