## Chicago & Alton Railway Company, et al., v. Lora M. Jennings.

1. REPLICATION—*form of, where fraud in obtaining release is averred.* A replication to a plea setting up a release, which charges fraud and covin in obtaining the same, should conclude with a verification rather than to the country; and in order that issue be formally made thereon, a rejoinder should be interposed by the defendant and a similiter added by the plaintiff.

2. BURDEN OF PROOF—*how, determined from pleadings.* The burden of proof is upon the party whose duty it is to or who actually adds a similiter.

3. ISSUES—*effect of irregular forming of.* Where the parties in forming the issues have not observed the due course of pleading, but, nevertheless, proceed to trial as though such issues were duly formed, such irregularity is immaterial.

4. RELEASE—*when intention of party in executing, is immaterial.* Where the plaintiff sues in case for personal injuries and the defendant pleads release and the plaintiff replies fraud, such replication admits the execution of the release, and the plaintiff's intention in executing the same is immaterial, and the effect thereof can only be overcome by proof of facts and circumstances surrounding the execution which show such fraud and covin as will vitiate its legal effect.

5. RELEASE—*burden of proof to overcome.* The burden of proof is upon the plaintiff to establish allegations of fraud and covin interposed by way of reply to the defendant's plea setting up such release.

6. RELEASE—*remedy where, is executed by mistake.* Where a release is relied upon by the defendant in an action at law as a bar, the plaintiff cannot claim that such release was executed by mistake, as such relief will only be granted in a court of equity.

7. RELEASE—*what fraud will vitiate.* In order to sustain a replication charging fraud in obtaining a release relied upon by the defendant, there must appear such words and acts upon the part of such defendant, as induce a reasonable belief upon the part of the jury that the mind of the plaintiff was over-persuaded and the execution of such release obtained by fraud upon the part of the defendant.

8. INSTRUCTIONS—*must not be contradictory.* Where two instructions given in a cause are so opposed to each other that the jury could not possibly follow both, error is committed.

Action on the case for personal injuries. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the November term, 1903. Reversed and remanded. Opinion filed June 28, 1904.

A. E. DeMANGE, for appellants; WILLIAM BROWN, General Solicitor, of counsel.

WELTY & STERLING, for appellee.

MR. JUSTICE GEST delivered the opinion of the court.

This suit is in trespass on the case for personal injury. The defendants pleaded first, the general issue, and second, release of damages. To the plea of release, the plaintiff replied that the release was obtained by the fraud and covin of the defendant. It will be noticed there is no replication denying the execution of the release. On the evening of August 20, 1901, appellee had taken passage on an excursion train on appellant's road on a round trip ticket from Bloomington to Wichita, Kansas. A little after midnight on that day, and at a point about twelve miles east of Jacksonville, near a place called Prentice, the train on which Mrs. Jennings was riding, ran into a freight train standing across the passenger's track. Both engines were badly broken, two freight cars were demolished, and four persons on the freight train were killed. The passenger train consisted of engine and tender, combination baggage and smoker car, next to a chair car, and behind the chair car, sleepers. Plaintiff was riding in the chair car on right-hand side, and in fourth or fifth seat from the door in front of her. The theory of plaintiff's case is that her spinal cord was injured in the collision, and her nervous system destroyed.

The only serious questions involved arise upon the pleadings, proof, instructions and rulings of the court relative to the alleged release. The defendants pleaded release, and concluded properly with a verification; the plaintiff replied fraud and covin of defendants in obtaining the release, and concluded to the country. This replication should have concluded with a verification, and should have been followed with a rejoinder by defendants denying fraud and covin, and concluding to the country, and thereupon the issue is formed by adding similiter. No similiter was added and it is unimportant whether a similiter was added or not. The party adding similiter has the burden of proof. Upon the pleadings as to release, the burden was upon plaintiff to prove that the release was obtained by defendants by fraud and covin practiced upon plaintiff. The parties and the court recognized that proposition upon the trial; no objection to the pleadings was made, and the errors in pleadings are therefore immaterial. The defendants pleaded the general issue and release, and the plaintiff having replied to the plea of release, that it was obtained by defendants' fraud and covin, the burden was cast upon the plaintiff of proving that she was injured by defendants' negligence; that she was exercising due care; and that the release was obtained by defendants' fraud. Counsel on both sides devote the greatest portion of their respective arguments to the discussion of the questions of law and fact arising upon the plea of release. There was evidence on the part of the defendants that in the morning after the accident, one O. D. Leach, claim agent of the defendants, stood at the front end of the chair car, and in a loud voice called for silence, and announced that the company desired to take care of its passengers; that surgeons were present to take care of any who were injured; that he desired to settle and to take releases for what damages had been sustained; that he had prepared a release to be signed; that he read the release; that he would pass through the train and see if he could get settlements; that he asked plaintiff if she was injured, and she said she was not; that she said she had heard the

release read and was glad to sign it, and that she did sign it and took two dollars. The foregoing is in substance the statement of Leach, and he is, in substance, corroborated by several other witnesses, some disinterested, some employees of the company.

The plaintiff denies that she made the above statements; says she heard nothing about a release and saw no release; that she heard Leach say that the accident would be in the newspapers; that the company would be receiving telegrams from the friends of the passengers and that he wanted the names and the addresses of the passengers so that he could answer such telegrams; that there was no writing on the page she signed; that nothing was said, and between 3 and 4 P. M., some hours after she signed the paper, he paid the two dollars without saying what it was for, and told a lady in front of her it was for expenses; that she did not know or understand that she was signing a release. Some witnesses called by plaintiff corroborate her statement in substance.

It appears from the testimony of Leach that the body of the release was written on the back of a pad of railroad ticket report blanks which he got from the agent at Prentice and the signatures were written below and upon the following leaves of the pad; how many names were on a leaf, the size of the leaves, or how many leaves were used or how or whether they were put or kept together does not appear. After the body of the release appears, to wit:

Names.         Addresses.         Amount.

One hundred and thirty-eight names were written in the pad.

The court gave the following among other instructions on behalf of plaintiff:

"3. The court instructs the jury that if you believe, from a preponderance of the evidence in this case, that the plaintiff has proven her case as laid in the declaration herein, then you should find the issues for the plaintiff, unless you further believe from the evidence in this case that the plaintiff, after she received the injury in question,

intentionally and understandingly released the defendants from liability for the same.

"4. The court instructs the jury that if they believe from the evidence in this case that the release offered in evidence by the defendants was obtained of the plaintiff by representations or acts of the agents of the defendants or either of them, which induced in her mind the belief that it was only for the purpose of giving the defendants asking for the same her name, so that they might answer any inquiries that might be made concerning her safety, and was not understood and intended by her as a discharge of the defendants from the claim which she had, or might have, against them, on account of her said injuries, then it is not a bar to this suit, and you should find for the plaintiff as to the release."

And on behalf of defendants gave the following instruction:

"5. The court instructs you that the release offered in evidence by the defendants is a complete bar to this action, except as to damage, if any, done to plaintiff's baggage, unless the plaintiff has proved by a preponderance of the evidence that defendants or their agents, officials or employees, procured plaintiff to sign the release by fraud or by a trick or device whereby the plaintiff was made to believe that she signed some other paper or instrument different from the one which she actually did sign, and which is offered in evidence in this cause."

When plaintiff was recalled in rebuttal she was asked by her counsel: "At the time you signed your name to the paper did you understand or know you were signing a release?" The defendants objected on the ground that her understanding or knowledge must be derived from what was said or done. The objection was overruled and she answered, "Certainly I did not." Under the pleadings in this case we think the giving of the above instructions three and four for plaintiff was error. The question presented under the plea of release was, did the defendants, by fraud and covin practiced by them upon the plaintiff, procure the release? The third instruction wholly ignores that question. The only matter submitted to the jury by it was, did she *intentionally* and understandingly release the defendants. No reference whatever is made to anything done or said by

defendants. She might have read the body of the release and known its contents; she might have heard an announcement by Leach that he wanted to take releases; that he wanted names and addresses in order to answer telegrams. She might have heard all that Leach says he stated and yet honestly say that she did not intentionally and understandingly release the defendants. What she in her mind intended and understood was entirely immaterial. The material matter was, what were the facts surrounding the transaction? Her intention and understanding are to be determined from a consideration of those facts and cannot in law be founded on any other basis. By her replication she says that she executed the release. She cannot be heard to say that she did not do so intentionally except by making proof that she was defrauded into doing it by the defendants. The presumption of law is that she did intentionally and knowingly release the defendants. Still another objection to this instruction is that the burden of proving that she intentionally and understandingly released the defendants is cast upon the defendants. The instruction directs the jury that if they find plaintiff has proven her case as laid in her declaration then they will find for her unless they further believe she intentionally and understandingly released. Under this language the defendants are required to prove by a preponderance of the evidence that she did, in that state of mind, release. This is directly contrary to the legal requirement. The plaintiff was required by the law to prove by a preponderance of the evidence that she was in some manner defrauded, cheated, cozened, over-reached by the defendants and thereby she executed the release. She was required to prove by a preponderance of the evidence both her cause of action as laid in her declaration and that the release was obtained by fraud and covin before she was entitled to recover. If the plaintiff did not intentionally and understandingly release the defendants as stated in the third instruction, and if such want of intention and understanding was purely by reason of mistake or misunderstanding on her part, then

surely she has no remedy at law; her remedy, if any, is in equity to set aside the release, but under the third instruction she is entitled to recover in this case whether her want of intention and understanding was the result of her own mistake or was caused by the fraud of defendants. It is no answer to the objection to this instruction to say that the jury were correctly instructed in defendants' instruction No. 5. The two instructions, No. 3 for plaintiff and No. 5 for the defendant, are absolutely contradictory and irreconcilable. The jury were left free to choose between them; they could not follow both. The fourth instruction for plaintiff above quoted is vicious for the same reason as above stated regarding the third. It contains the same elements of understanding and intention of the plaintiff as to releasing the defendants. The instruction says, " representations or acts of the defendants which induced in her mind the belief," etc. No representations, no words or acts are stated. What were the representations or acts which plaintiff claims induced the belief? To whom were the representations made? The instruction is silent. "Which induced in her mind the belief." The defendant is not responsible for the belief which all its passengers may entertain, though induced by words or acts of its agents; it must be a reasonable belief; the words or acts must be such as are calculated to deceive, mislead or misinform. If defendants' agent did say that he wanted names and addresses of the passengers in order that the company might answer inquiries, and if he also said that he had a release which he would pass around and ask the passengers to sign, and if all he said was in the same tone of voice and without attempt to deceive, and if the plaintiff from inadvertence at the time, or some other reason not occasioned by the defendants, only heard what he said about names and addresses, and she was thereby induced to believe that the paper to be signed was only for that purpose, and she signed it, could it be reasonably said that the defendants by fraud and covin procured it? We think not, and yet that precise situation may have existed, and by the

C. & A. Ry. Co. v. Jennings.

testimony of several witnesses did exist. The vice of the instruction in that respect is that it does not undertake to state what the deceit was that is claimed by plaintiff to have been practiced. It would not be sufficient to state that if the jury believed from the evidence that defendants' agent represented that he wished to get the names and addresses of the passengers for the purpose above named, and if they further believe that plaintiff thereby was induced to believe, etc., the instruction would have to go further and state that that was all he said, or that he said nothing about a release, or some other apt language from which the court could see that a release obtained on the faith of all the words spoken would be a fraud on the plaintiff. The office of an instruction is to state hypothetically a state of facts which, if the jury find to be proven, will authorize them to find a certain verdict. The instruction does not submit any proposition of fact for the determination of the jury. It requires the jury to find whether plaintiff was induced to a certain belief and that she did not have a certain understanding and intention. But the grounds of such belief, the matter of fact which the jury must find existed as the basis, the cause of such belief, is not stated. It is for the court, not the jury, to fix, to lay down, to state what matter of fact such basis must be. It would be wholly improper to submit an instruction that if the jury believed from the evidence that the release in evidence was obtained of the plaintiff by the fraud and covin of the agents of the defendants which induced in her mind, etc., and yet such an instruction is manifestly as good if not better than this instruction No. 4. Before the jury would be authorized to find that the release was obtained by fraud and covin, they must find some specific fact or state of facts to have existed or to have been said or done by the defendants which induced the belief, and that specific fact or state of facts must be stated in the instruction, because, as above stated, it is the province of the court to determine what state of facts constitute fraud and covin, and it is the province of the jury to determine whether that

state of facts has been proven. Counsel for the defendants insist that it was error in the court to permit the plaintiff in rebuttal to answer this question: "At the time you signed your name to the paper did you understand or know that you were signing a release?" The witness answered, "Certainly I did not." In National Syrup Co. v. Carlson, 155 Ill. 215, the following question was asked of the plaintiff: "At the time you signed your name on this paper did you know in any way that you were settling with the company for damages on account of your injury?" The evidence in the case, uncontradicted, was that plaintiff could not read or write English; that the release was not read to him, and that he was told to sign his name; that while he had been confined by his injury his wife had received various sums of money from the company. The witness answered: "I understood the paper was for the payments, to show the company where the money went." The court holds that the question was proper and the answer improper and not responsive, but no motion was made to strike out the answer. The court quotes approvingly from Hewitt v. Clark, 91 Ill. 605: "A witness ought not to be permitted to state his inference from what was said, or his understanding. To permit a witness in answer to such a question to say ' it was my understanding,' etc., is erroneous." The question put in the Carlson case is substantially the question put to Mrs. Jennings except that here the witness was asked, Did you *understand* or know? The word "understand" ought not to have been used. The jury might well conclude from her answer that from what had been said by Leach she did not understand that the paper signed was a release. In such case the answer would be nothing but her inference or conclusion from what was said, and that the court in the Carlson and Hewitt cases expressly condemn. The plaintiff's answer to that question if believed by the jury, taken in connection with plaintiff's instruction No. 3, would of necessity lead the jury to the conclusion that the release was of no validity. We think it was error in this case to overrule the objection;

not such error as taken alone would require a reversal, but when considered with instruction No. 3, it is evident that it tended still further to mislead the jury. We have examined the authorities cited by counsel for appellee. The facts as shown by the reports of those cases were quite different from the facts in this case. An instruction given under one state of facts may be proper, which, if given under another state of facts, similar in some respects and quite dissimilar in other respects, would be improper. Even abstract propositions of law are oftentimes held to be reversible error; much more so are instructions as to matters of fact which wholly fail to state a sufficient basis of fact on which to find. Other instructions which were offered by defendants and refused were properly refused. They were in substance repetition of those already given.

There are some other and minor matters complained of by defendants, some of which are well taken, some not. We do not think it is necessary to refer to them specifically.

In this case the evidence is conflicting. It cannot be said it clearly preponderates on the side of the plaintiff. In such case instructions must be accurate and consistent.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*