The Chicago and Alton Railroad Company

*v.*

Lora M. Jennings.

*Opinion filed October 24, 1905.*

1. Trial—*fact that plaintiff contradicts herself does not justify directing verdict.* The fact that plaintiff's testimony as to having been injured in a railroad collision is alleged to be discredited by her own contradictory statements is not ground for directing a verdict for the defendant upon the ground that no injury was proved, since the question of her credibility is one of fact for the jury.

2. Same—*what tends to show that signature to release of damages was obtained by fraud.* Evidence that after the collision in which the plaintiff was hurt the defendant's claim agent circulated papers containing formal releases of damages for the signatures and addresses of injured passengers, upon the representation that he would then answer telegrams from their friends, and that he afterwards distributed sums of one and two dollars among the parties so signing, including the plaintiff, for the alleged purpose of defraying their expenses caused by the delay, nothing being said about releasing damages, tends to show that the plaintiff's signature was obtained to the release by fraud.

3. Evidence—*proof that a message was sent cannot be shown by proving statements of the messenger.* The fact that a message was sent by one person to another, and what the character of such alleged message was, cannot be proved by the person receiving such message, where his testimony is based solely upon hearsay statements of the person delivering the message.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. Colostin D. Myers, Judge, presiding.

Kerrick & Bracken, (F. S. Winston, of counsel,) for appellant.

Welty, Sterling & Whitmore, for appellee.

Mr. Justice Boggs delivered the opinion of the court: ·

On August 20, 1905, an excursion train and a freight train which the appellant company was operating on the line of its railroad collided. The appellee was a passenger on the excursion train, and brought an action to recover damages for personal injuries alleged to have been caused by the collision. Judgment in her favor in the sum of $2500, entered in the trial court, was affirmed by the Appellate Court for the Third District on appeal, and the further appeal of the company has brought the record before us.

It is urged that the court erred in refusing to grant the motion of the appellant company to direct the jury to return a peremptory verdict in its favor. The grounds of the motion were, first, that there was no sufficient proof that the appellee received any injury as the result of the collision; and second, that the appellant company pleaded and proved a valid release of all damages.

As to the first ground, it is conceded the appellee testified that she received injuries to her person by the collision, but it is said by counsel for the appellant she was discredited "by her own contradictory and unbelievable statements," and that the court should have so decided as a matter of law. We cannot assent to this view. It was for the jury to determine whether she was entitled to credit as a witness, and also to determine as to the weight of her evidence. In addition to this, hypothetical questions propounded to and answered by medical expert witnesses tended to show the appellee received injuries to her person by the impact of the trains.

As to the second ground of the motion, the appellee replied to the plea of release that her signature to the instrument purporting to be a release had been obtained by fraud

and circumvention, and produced sufficient testimony tend-
ing to support the replication to justify the submission of
that issue to the jury. The release produced in support of
the plea consisted of several sheets of paper, which bore the
signatures, together with the places of residence, of one hun-
dred and forty persons, among them the signature of the ap-
pellee and her address. Above these signatures, on one of the
sheets, appeared a release, reciting that, to quote therefrom,
"the undersigned, for and in consideration of the amount
set opposite our names and addresses, the receipt of which
amount is hereby acknowledged, do release the Chicago and
Alton Railway Company for any and all damages sustained
by each of us (except for baggage) in collision at Prentice,
Illinois." The amount set opposite the name of the appellee
was two dollars, but it appeared that she did no more than
to write her name and address, and that not as a release of
damages but for other purposes hereinafter stated, and that
the characters, "$2," were afterwards written there without
her knowledge or consent. A claim agent of the appellant
company was on the train when the collision occurred. Tes-
timony produced before the jury tended to show that after
the excursion train had been put in motion and was proceed-
ing on its way this claim agent came through the cars, and
said, in substance, that the news of the collision would be
printed in the newspapers, and that if the passengers would
give their names and addresses he would answer all mes-
sages of inquiry that came for any of them; that the sheets
of paper now claimed to constitute releases of damages by
the one hundred and forty signers thereto were circulated
through the cars and signed by the passengers, each also
writing his or her address; that nothing was said to the ap-
pellee about a release of damages or payment of money and
no money was then paid to her; that some time after these
signatures were so obtained the claim agent again passed
through the cars and gave many of the passengers small
sums of money, some one and some two dollars, saying that

it was to defray their expenses while they were delayed by reason of the collision; the appellee received two dollars for such expense of delay. We have considered the testimony relating to the circumstances under which the signature of the appellee was obtained to the instrument sought to be availed of as a release, and find it amply warranted the submission of the question whether her signature was obtained by fraud and circumvention.

An alleged erroneous ruling of the court as to the admissibility of evidence relative to this issue may appropriately be here considered. The appellee, after testifying that some hours after the papers which are relied upon as a release had been passed through the cars and the names and addresses signed thereto the claim agent again came into the car in which she was seated, further testified as follows:

"The first I saw he was in the front of the car, beginning to hand money out to the passengers. He had a handful of money. I heard him. say something to the lady in front of me.

Q. "What did she say and what did he say?

A. "She asked what it was for, and he said it was to pay the delay expenses. When he came to me he just handed me the two dollars. He didn't say anything to me. He told a man in the aisle it was for delayed expense.

Q. "Look at 'Exhibit A.' Opposite your name you see two dollars marked there. Did you put that there? (Objected to for the reason it is not claimed she did.)

A. "No, sir; I don't know who did put it there. It wasn't there when I signed my name and address."

A number of other witnesses who were passengers were permitted to testify that the claim agent passed through the car some time after the signatures were obtained and made substantially the same statements to them when he paid them the money which they received.

It is complained the court, on the objection of the appellee, refused to permit counsel for the appellant to ask Miss

Walton, a witness produced by the company and who was a passenger on the excursion train, what the claim agent said to her or in her hearing as he passed through the train. In the further course of her examination Miss Walton was allowed to state fully and in detail all that the claim agent so said as he passed through the car, so far as she heard his statements, hence no injury occurred from the ruling referred to, and a discussion as to the correctness of the ruling would lengthen the opinion to no purpose.

We find no merit in the contention that the court erred in refusing to allow Mr. DeMange, when testifying as a witness in behalf of the appellant company, to state what Miss Grenburg, who came to Mr. DeMange as a messenger from Dr. Langstaff, said to him, DeMange. Mr. DeMange had been attorney for the appellant company, but severed that connection before appearing as a witness. Dr. Langstaff had testified as a witness in behalf of the appellee and gave testimony tending to sustain the justice of her demand, and counsel for appellant contended he had sent Miss Grenburg to see DeMange, and directed her to tell him "that the plaintiff's case was a fraud and that she had no valid claim against the Chicago and Alton company." Dr. Langstaff was asked if he did not send this message by Miss Grenburg, and he answered that he did not. The appellee was in no manner bound by any statement made by Dr. Langstaff, and proof as to any message sent by him to Mr. DeMange was proper only as tending to impeach the testimony which Dr. Langstaff had given relative to the personal injuries of the appellee. It would, for such purpose of impeachment, have been proper for the appellant company, after having asked Dr. Langstaff if he did not send the message as claimed, to have proven that he did so send the message. But we find no such proof in the record. Mr. DeMange appeared as a witness, and after testifying that a lady, presumably Miss Grenburg, came to his office and stated that she had a message to deliver to him from Dr. Langstaff, was

asked by the counsel for the appellant company the follow-
ing question: "What did this lady say to you?" and the court
refused to allow him to answer. This ruling was proper for
more than one reason. There was no proof that Dr. Lang-
staff had sent the message referred to, and that could not be
proved by mere hearsay statements of the alleged messenger.
That an impeaching statement was made by this witness
sought to be impeached cannot be proved by hearsay. If it
had been proved that Dr. Langstaff had directed Miss Gren-
burg to deliver the message referred to, proof with relation
to it had no proper place in the case as substantive evidence
against the appellee, but only as evidence tending to discredit
Dr. Langstaff as a witness. It should, therefore, if proper
at all, have been brought out by asking the direct impeach-
ing question whether the lady witness, Miss Grenburg, said
that Dr. Langstaff had directed her to say that "the plain-
tiff's case was a fraud, and that she (the plaintiff) had no
valid claim against the Chicago and Alton company," thus
restricting the statement to the precise matter relied upon for
the purpose of impeachment. The question as propounded,
"What did the lady (Miss Grenburg) say to you?" might
have brought out testimony which had no reference to the
matter of impeachment of Dr. Langstaff and which would
be but mere hearsay as to the appellee, and for that reason
wholly incompetent.

No complaint is made of the ruling of the court in the
matter of instructing the jury, nor are any other errors of
which we take cognizance urged by counsel. The major part
of the briefs of counsel for the appellant is devoted to ques-
tions of fact which have been conclusively determined by the
judgment of the Appellate Court.

The judgment must be and is affirmed.

*Judgment affirmed.*