The Inter Insurance Exchange of Chicago Motor Club, Appellee, v. Alfred G. Andersen and Albert Kuntz, Appellants.

Gen. No. 43,662.

Opinion filed May 7, 1947. Released for publication May 22, 1947.

SMIETANKA, NOWAK & GARRIGAN, of Chicago, for certain appellant; GEORGE H. MORTON, of Chicago, of counsel.

WEINROB & FELDMAN, for certain other appellant; ARTHUR ROSENBLUM, of Chicago, of counsel.

BRAUN, JOHNSON, SHIELDS & RYAN, of Chicago, for appellee; PHILIP E. RYAN, of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court. This is a personal injury action joined with an action for breach of contract. Plaintiff, as Andersen's subrogee, sued Kuntz for property damage to Andersen's automobile, arising out of a collision with Kuntz's automobile. As Andersen's insurer, plaintiff sued him to recover the amount it paid him for that property damage. The court at the close of the evi-

dence directed verdicts and entered judgment against both defendants. Each defendant has appealed from the judgment against him.

The collision occurred August 2, 1939 at the intersection of Cicero Avenue and Diversey Boulevard in Chicago. Both cars were damaged and Andersen's hand was injured. At the time Andersen carried a policy of collision insurance with plaintiff. The policy covered only property damage. Andersen was required by its terms to pay the first $25 damage. After the accident he had an estimate made of the damage to his car. He submitted the estimate of $380.68 to plaintiff. On August 11, 1939 it paid him $356 which was the estimated sum less the $25 deductible under the policy.

Kuntz was arrested at the scene of the accident. He was charged with reckless driving. At a subsequent hearing of the charge against him, it appears that the Municipal Court judge in the Safety Court recommended that Kuntz settle with Andersen for $75. On October 11, 1939, Kuntz paid Andersen $75 and the latter signed a release prepared by Kuntz's attorney. November 25, 1939, plaintiff wrote Andersen that it was informed he had retained an attorney ''to represent you in your claim for personal injuries and your share of the property damage.'' The letter requested Andersen to advise plaintiff what he had collected from Kuntz. Andersen endorsed on the letter the statement that Kuntz had paid him $75, and ''As far as I am concerned, the matter is closed.''

The case was tried on plaintiff's amended statement of claim. The original suit, brought April 10, 1940, was against Kuntz. It alleged the necessary elements of a negligence case. Kuntz' pleading admitted Andersen's due care, denied negligence and set up the release from Andersen to bar plaintiff's action. The amended statement of claim in Count I realleged the negligence case against Kuntz. Count 2 alleged the insurance

contract between plaintiff and Andersen, and plaintiff's right of subrogation through paying Andersen $356 under the policy; Andersen's execution of "a full and general release," releasing and discharging Kuntz "forever" from any and all liability; and that by giving the release Andersen violated his contract of insurance, resulting in Kuntz' failure to pay plaintiff, "all of which was a fraud on plaintiff." Andersen's pleading admitted the policy and receipt of the $356; averred he had no knowledge of the subrogation provisions; had no recollection of the circumstances of the accident; that the policy did not cover the damages for which he received $75 from Kuntz; and that he did not "recollect" that the release was general. He denied fraud or knowledge that the policy prohibited his giving a release.

The record contains a written statement of the reasons given by the trial court for its decision. It appears that the court concluded that Kuntz was guilty of negligence as a matter of law upon the evidence and that Andersen had breached his contract by wilfully failing to cooperate with plaintiff. The trial court did not expressly pass on the release. By implication, however, in finding against Kuntz, it impliedly determined that the release was not sufficient to bar plaintiff's action.

██ ██ Andersen contends the verdicts are inconsistent. Plaintiff says this point was waived, since it was not raised in the motion for a new trial. In oral argument plaintiff's attorney admitted the inconsistency of the two verdicts. We think that we must decide the point in any event. We could hardly dispose of the appeal otherwise. We find, accordingly, that the verdicts are inconsistent and that one or the other must fall. Andersen could not be guilty of fraud in breaching his contract with plaintiff by giving Kuntz a general release, and Kuntz also be held liable for the damages subject of the release.

Kuntz contends that his release from Andersen protected him against liability to Andersen or his subrogee notwithstanding Kuntz' guilt of the negligence charge against him. Andersen contends he released only the claim based on his personal injuries and property damage not covered by the policy. Plaintiff, arguing in its brief against both Andersen and Kuntz, says that the release was void because it was procured by Kuntz with knowledge of plaintiff's previous settlement with Andersen.

The decisions on the questions presented by the briefs have not been uniform. The general rule seems to be that where the wrongdoer procures a release from the insured with knowledge that the insurance has been paid, the release is no bar to an action by the subrogee insurer against the wrongdoer. *American Insurance Co. v. Speiker,* 187 N. E. 355 (Ind. App.); *Hamilton Insurance Co. v. Greger,* 158 N. E. 60 (N. Y. Sup.); *Powell & Powell v. Wake Water Co.,* 88 S. E. 426, (171 N. C. 290); *Wolverine Insurance Company v. Klomparens,* 273 Mich. 493; and *C. B. & Q. R. R. Co. v. Emmons,* 42 Ill. App. 138. A different rule has been applied where the release is obtained before payment by the insurer. *Hamilton Ins. Co. v. Greger.* There is authority for the view that when the insurance payment is made the right of subrogation attaches and cannot be extinguished by release given the wrongdoer by the insured. *Powell & Powell v. Wake Water Co.* 88 S. E. 426 (171 N. C. 290). It has lately been held that no act of the insured after payment of the insurance releasing the wrongdoer can defeat the insurer's right of subrogation. *The City of New York Ins. Co. v. Tice,* 159 Kans. 176; 29 Am. Juris. 344.

The early cases which seem to underlie the rules hereinabove stated, are *Hart v. Western R. R. Corp.,* 54 Mass. 99; *Connecticut Fire Ins. Co. v. Erie R. R.,* 73 N. Y. 399; *Swarthout v. C. N. W. Ry.,* 49 Wis. 628; *Monmouth Ins. Co. v. Hutchinson,* 21 N. J. 117; and *A. T.*

*& S. F. R. R. v. Home Ins. Co.,* 59 Kans. 432. The *Hart case* is the leading case. It stated the rule that the insured, by accepting payment of the insurance impliedly made an equitable assignment of his right of action to the insurer and that the courts would restrain and prohibit the assignor from defeating this right by release. Cited to this rule was *Payne v. Rogers,* 1 Doug. (Court of Kings Bench) (Eng.) 407, where it was held that a release given by a tenant while an action was pending by the landlord in the name of the tenant, should be canceled. The *Hutchinson* and *Erie R. R. cases* on authority of the Hart decision held that a release procured by the wrongdoer with knowledge of payment of the insurance, would not bar the insurer's action against the *wrongdoer.* In the *Swarthout case* the court on the authority of the *Hart case* held that the *insured* would not be allowed to defeat the insurer's action.

The foregoing history of the rule will indicate that originally in the *Hart case,* the protection was against the insured, whereas, later it was extended against the wrongdoer, that is, even though the insurer might sue in the name of the insured and the wrongdoer resist the action by setting up a release, the release was struck down, on the ground that the insured should not be permitted to defeat the action. The courts in the cases considered have applied the rule both against the wrongdoer and the insured, as defendants. The Supreme Court of Pennsylvania in *Illinois Automobile Insurance Exch. v. Braun,* 280 Pa. 550, 124 Atl. 691, held that the *insured* must reimburse the insurer where the former prevented the latter's action against the wrongdoer.

A reading of all of these cases indicates plainly that the purpose of the courts has been to protect the subrogation rights of the insurer, whether the insurer chose to sue the wrongdoer as subrogee or to sue the insured for breach of policy, or both. What lack of

unanimity there is arises, it seems, as to how best the protection can be given, whether by blaming the insured or wrongdoer. Andersen in this case has a contract with the insurer. Kuntz has not. He is a stranger to the contract. His settlement does not bring him into a contractual relationship with the insurer. Where he has knowledge of payment it could be said that he has *ipso facto* knowledge of the subrogated rights and thereby of the new relationship now existing between him and the insurer. On the other hand, placing the onus of protecting the insurer upon the insured, would seem more logical and certain. He has the duty of good faith whether expressed or not. He has signed and presumably read the insurance contract. The goal of prudence in one's conduct would seem to be reached more truly by making the insured duty bound to refrain from executing a release except with the approval of the insurer. This was the view of the Pennsylvania Supreme Court in *Illinois Automobile Insurance Exch. v. Braun*. This rule should serve also to accomplish the other desired object of preventing any fraudulent scheme on the part of the wrongdoer to circumvent the insurer.

In the release Andersen admits and acknowledges payment from Kuntz "in full settlement, accord and satisfaction of any and all claims which I now have or may hereafter have against Kuntz on account of an accident causing personal injury and property damage to me on the second day of August, 1939." The record shows plaintiff objected to testimony of conversations between Andersen and Kuntz which showed that the items released were Andersen's injuries and the property damage not covered by the policy. The objection was overruled. In plaintiff's tort action, there was no charge of fraud against Kuntz in the procurement of the release. The release was set up in defense. Plaintiff had the burden of proving that the release was void. *C. & A. Ry. Co. v. Jennings*,

114 Ill. App. 622 (Aff'd 217 Ill. 494) ; *Rumszas v. C. R. I. & P. Ry.*, 196 Ill. App. 41. It filed no replication and thereby admitted. the validity of the release. By its terms the release is general. There is no ambiguity or uncertainty in it. Testimony which tended to show the intention of the parties to effect a limited release was, therefore, inadmissible. *Brundage v. Gottschalk*, 265 Ill. App. 260 (Certificate denied by Sup. Ct.) ; *Chicago Union Traction Co. v. O'Connell*, 224 Ill. 428. The court had the duty to disregard that testimony, although uncontradicted, in construing the release even though not properly objected to at the trial. The release was effective to bar any action by Andersen or plaintiff as subrogee. 50 Am. Juris. pp. 752, 753.

[6] It follows from the foregoing conclusion that we believe Andersen gave Kuntz a general release which barred plaintiff's recovery against Kuntz. This was the substance of plaintiff's charge against Andersen. It charged him with a fraud upon it through giving the release. Andersen for a contrary rule relies upon *James v. The Emmco Ins. Co.*, 30 S. E. (2d) 361, (Ga. App.) ; *American Automobile Fire Ins. Co. v. Speiker*, 187 N. E. 355 (Ind. App.) ; *Hamilton Fire Ins. Co. v. Greger*, 158 N. E. 60 (N. Y.) ; *Maryland Casualty Co. v. Rees*, 50 N. E. (2d) 347 (Ohio App.). *Powell & Powell v. Wake Water Co.*, 88 S. E. 426 (N. Car.). Plaintiff in arguing to support its judgment against Kuntz relied upon *Wolverine Ins. Co. v. Klomparens*, 273 Mich. 493; *C. B. & Q. R. R. Co. v. Emmons*, 42 Ill. App. 138, the only Illinois case on the subject.

In the *James case* there was no proof that the insurer was prevented from collecting against the wrongdoer. Here plaintiff was prevented. In the *Speiker, Greger, Rees* and *Klomparens cases*, the courts considered the releases to have been limited by evidence of intent. We hold evidence of intent in this case was inadmissible. In the *Powell case* the court held that when the insurance was paid the right of subrogation

attached and could not be extinguished by a release given by the insured. In that case and the *Klomparens case,* suit was against the wrongdoer. In the *Emmons case,* suit was against the wrongdoer who had made an oral agreement to pay the insurer and not the insured.

There was no express prohibition in the policy against Andersen giving a release. He was expressly required, however, to cooperate with plaintiff to secure the latter's rights under the subrogation, and to cooperate with it in trials and settlements. There is no question of his right to sue Kuntz or settle with him for injuries and damages not covered by the policy, subject to his contract with plaintiff. The insurer knew that Andersen had been paid the $75 by Kuntz, but not that he had given the release. Kuntz knew before the settlement that the insurance company had paid under the policy. This fact had no bearing upon the relationship between plaintiff and Andersen. Andersen could not avoid his responsibility to cooperate with plaintiff by informing Kuntz of his settlement with plaintiff. The subrogation agreement between plaintiff and Andersen did not bring Kuntz into any contract with plaintiff. He had no responsibility to plaintiff in the absence of a collusive or fraudulent transaction with Andersen. There is no claim of any such transaction.

We hold that the release given by Andersen prevented plaintiff from enforcing its subrogation right against Kuntz and that Andersen must return to plaintiff what he received from it. This conclusion rests upon the doctrine that in a case such as this the insured, rather than a stranger to the insurance contract, must be conscious of the duties arising out of his relationship with the insurer. Good faith required that Andersen conduct himself with Kuntz so as not to injure plaintiff. He acted at his peril when he gave the release to Kuntz without the acquiescence of plaintiff.

*Illinois Automobile Insurance Exch. v. Braun,* 280 Pa. 550, 124 Atl. 691.

For the reasons given the judgment against Andersen is affirmed and the judgment against Kuntz is reversed and judgment is entered here for costs in favor of Kuntz and against plaintiff.

*Judgment affirmed as to Andersen; judgment reversed as to Kuntz; and judgment here for costs in favor of Kuntz and against plaintiff.*

Lewe, P. J., and Burke, J., concur.