THE HOME INSURANCE COMPANY, Plaintiff-Appellant, *v.* THE HERTZ CORPORATION *et al.*, Defendants-Appellees.

First District (4th Division)    No. 76-1030

Opinion filed June 9, 1977.

Richard J. Friedman and Rance V. Buehler, both of Chicago, for appellant.

Paul D. Frenz and Elias N. Matsakis, both of McBride, Baker, Wienke & Schlosser, of Chicago, for appellees.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal of a dismissal order by the circuit court of Cook County. The action below was brought by The Home Insurance Company, an auto insurer, as subrogee, to recover sums paid by it to its insured for damages incurred by him occasioned by the negligence of Gary D. Gardner (the tort-feasor). Defendants entered a motion to dismiss which raised as a bar to the action a general release running from the insured to the defendants.

Submitted for review is the question of whether the execution of a release for valuable consideration by the plaintiff-subrogee's insured in favor of the defendants pursuant to the settlement of litigation between plaintiff's insured and defendants, bars a subsequent subrogation action by the plaintiff against the defendants, where the plaintiff had given notice of its subrogation interest to the defendants prior to the settlement.

Plaintiff's insured, Scott D. Mennie (the insured), sustained personal injuries and property damage on August 2, 1974, when an auto driven by defendant Ingram Barge, Inc.'s employee, Gary D. Gardner, collided with his automobile. Damage to the insured's auto amounted to $2,042.86. The Home Insurance Company (plaintiff) paid the total sum of $1,942.86 for the repairs to its insured's auto. The insured assigned his rights to recovery of these sums to plaintiff. On January 29, 1975, plaintiff notified Ingram Corporation of New Orleans, Louisiana (Ingram), self-insured (not a party defendant but the parent corporation of party defendant Ingram Barge, Inc., an Illinois corporation) that plaintiff had paid the loss and was claiming subrogation rights in the total amount of the sums paid to. its insured for auto repairs and other expenses.

Ingram thereafter negotiated with the plaintiff on behalf of Gary D. Gardner, The Hertz Corporation (lessor of the Gardner auto), and Ingram Barge, Inc., through Crawford and Company adjusters and later directly with plaintiff.

On October 15, 1974, the insured sued the tort-feasor, Ingram Barge, Inc. (Ingram Barge), and The Hertz Corporation for personal injuries and the $100 portion of property damage he sustained in the accident. This suit was filed in the Du Page County Eighteenth Judicial Circuit (the Du Page action). Thereafter, the insured and defendants agreed to settle and dismiss the Du Page action upon a payment of $6,000 to the insured. On June 24, 1975, the insured executed a full and final release of all claims arising out of the accident. In return he received a $6,000 check.

On March 26, 1976, the plaintiff filed this action against the defendants, all of whom were the same defendants named in the Du Page suit. In its complaint, plaintiff alleges it paid to or on behalf of the insured, the sum of $1,942.86 for damage to his auto and $139.80 for X-ray, surgical and

ambulance services. Plaintiff alleges it thereby became subrogated to the interests of the insured and brought this action against defendants to collect the amounts it has paid.

Defendants moved to dismiss plaintiff's complaint as barred by the execution of a full release by the insured. Plaintiff filed a reply to defendants' motion to dismiss supported by affidavits. The circuit court dismissed the action and this appeal followed.

Plaintiff's brief on appeal concedes there is an unbroken line of Illinois appellate court cases which support the circuit court's ruling that the plaintiff's claim is barred by the insured's release to the defendants.

The Illinois appellate court was presented with a similar factual situation as here in *Inter Insurance Exchange of Chicago Motor Club v. Andersen* (1st Dist. 1947), 331 Ill. App. 250, 73 N.E.2d 12. In *Andersen*, the plaintiff insurance company was suing the defendant Kuntz for property damage to its insured's (Andersen) auto. Andersen and Kuntz had been involved in an auto accident and subsequent thereto Inter Insurance paid to Andersen the amount of $380.60, which was the amount of an estimate of the damage to his auto less the $25 policy deductible. Subsequent to payment, Kuntz paid Andersen $75, and Andersen signed a general release prepared by Kuntz' attorney.

The court surveyed the law and, in holding the release executed by Kuntz was effective to bar any action by Inter Insurance as Andersen's subrogee, stated:

"Andersen in this case has a contract with the insurer. Kuntz has not. He is a stranger to the contract. His settlement does not bring him into a contractual relationship with the insurer. Where he has knowledge of payment it could be said that he has *ipso facto* knowledge of the subrogated rights and thereby of the new relationship now existing between him and the insurer. On the other hand, placing the onus of protecting the insurer upon the insured, would seem more logical and certain. He has the duty of good faith whether expressed or not. He has signed and presumably read the insurance contract. The goal of prudence in one's conduct would seem to be reached more truly by making the insured duty bound to refrain from executing a release except with the approval of the insurer." 331 Ill. App. 250, 256.

The court in *Andersen* acknowledged Kuntz knew before the settlement that the insurance company had paid Andersen under its policy. The court stated:

"Kuntz knew before the settlement that the insurance company had paid under the policy. This fact had no bearing upon the relationship between plaintiff and Andersen. Andersen could not avoid his responsibility to cooperate with plaintiff by informing

Kuntz of his settlement with plaintiff. The subrogation agreement between plaintiff and Andersen did not bring Kuntz into any contract with plaintiff. He had no responsibility to plaintiff in the absence of a collusive or fraudulent transaction with Andersen." 331 Ill. App. 250, 258.

The holding in *Andersen* has never been overruled, and in fact, has been cited with approval in two recent cases, *St. Louis Fire & Marine Insurance Co. v. Garnier* (3d Dist. 1960), 24 Ill. App. 2d 408, 164 N.E.2d 625, and *Shaw v. Close* (1st Dist. 1968), 92 Ill. App. 2d 1, 235 N.E.2d 830.

Plaintiff relies on *Chicago, Burlington & Quincy R.R. Co. v. Emmons* (1890), 42 Ill. App. 138, where an insurance-subrogee was allowed recovery from the tort-feasor even though he had obtained a general release. The case at bar, however, is not a case of fraud or deliberate misconduct, as is *Emmons.*

In *Emmons* a railroad company which was allegedly responsible for a fire on Emmons' property contended a release received from Emmons barred an action against it brought by Emmons' insurance company, which had paid a portion of Emmons' loss in reliance upon a settlement understanding between the insurance company, Emmons and the railroad. The court held the release was ineffective as to the insurance company because the railroad had agreed with the insurance company to withhold from Emmons a portion of its agreed settlement sum with Emmons, sufficient to reimburse the insurance company. The court also noted the insurance company, prior to paying Emmons, had receivied assurances from the railroad, the railroad would reimburse it for those payments. At the time Emmons executed the release, he received only the amount equal to the agreed settlement sum less the amount earlier received by Emmons from his insurance company. On these facts, the court found fraud in the procurement of the release and the absence of consideration in the execution of the release. It therefore found the release did not defeat the insurance company's rights to recover from the railroad. Unlike *Emmons*, in the present case the settlement sum paid to the insured included amounts for expenses paid by plaintiff and no amount of the settlement sum was withheld. Plaintiff has not alleged any fraud on the part of the defendants in the procurement of the release, nor has it shown that their payment to the insured was pursuant to an earlier agreement with the defendants to ultimately satisfy their subrogation interest. Thus, the holding in the *Emmons* case is consistent with the *Andersen* decision.

Plaintiff claims it has brought this appeal partly to request a reconsideration and reappraisal of the position taken in *Andersen*. Plaintiff points to a majority of sister State courts which have seen fit to arrive at an opposite result as *Andersen*, regarding the same question as is

presented here. Defendants, however, concentrate their argument on *Andersen* and those Illinois appellate cases following *Andersen*, in suggesting stare decisis requires an affirmance.

■■ The principle of stare decisis recognizes an inherent value in a court to abide by, or adhere to, decided cases. It is the policy of courts to stand by precedent and not to disturb a settled point. *Neff v. George* (1936), 364 Ill. 306, 4 N.E.2d 338.

The defendants support the principle of stare decisis and rely on *Maki v. Frelk* (1968), 40 Ill. 2d 193, 239 N.E.2d 445, where the Illinois Supreme Court recognized the rule of stare decisis as being founded on sound principles in the administration of justice, and concluded when Illinois law is settled, and contravenes no statute or constitutional principle, the principle of stare decisis ought to be followed. The rule of stare decisis, however, is not absolute. As the court concluded in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 26, 163 N.E.2d 89, 96:

> "* * * when it appears that public policy and social needs require a departure from prior decisions, it is our duty * * * to overrule those decisions and establish a rule consonant with our present day concept of right or justice."

■■ After careful reconsideration and reappraisal of the law in Illinois as found in *Andersen* and succeeding Illinois appellate cases, we find public policy and social needs do not require a departure from these prior decisions. We hold the execution of a release for valuable consideration by the plaintiff-subrogee's insured in favor of the defendants, pursuant to the settlement of litigation between plaintiff's insured and defendants, bars a subsequent subrogation action by the plaintiff against the defendants, even though the plaintiff had given notice of its subrogation interest to the defendants prior to the settlement.

Although barred from proceeding against the tort-feasor, the insuror-subrogee may proceed against the insured-subrogor, in order to protect its rights under the subrogation agreement. Public need and social policy are not offended since the insured, as compared to the tort-feasor, is in a more proper position to compensate the insuror-subrogee.

For the foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

LINN and JOHNSON, JJ., concur.