THE FIRE ASSOCIATION OF PHILADELPHIA, complainant,

*v.*

THOMAS WELLS, defendant.

[Submitted December 17th, 1914.   Decided June 14th, 1915.]

1. The right of subrogation accruing to an insurance company to recover from a tort-feasor, through whose negligence the loss was incurred, the amount paid on its policy of insurance, is not barred by a settlement between the tort-feasor and the owner for a sum less than the actual liability of the former, and for which the latter gave a full release, for such a release is a fraud upon the subrogee which will be no defence either at law or in equity to its action to recover the loss remaining unsatisfied after applying to its satisfaction the sum paid by the tort-feasor.

2. Where the subrogee proceeds in the first instance against the insured and in that proceeding it appears that the damages for which a tort-feasor is liable to an insured exceeds the sum for which the insured settled with him, and that a sufficient sum remains unpaid to satisfy the subrogee, such a conclusion is final between the parties to the record.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, whose opinion is reported in *83 N. J. Eq. 140*.

*Mr. Frank Smathers,* for the complainant.

*Messrs. Wescott & Weaver,* for the defendant.

The opinion of the court was delivered by

BERGEN, J.

Certain of defendant's buildings, with their contents, were destroyed by a fire communicated through the negligence of the servants of the Atlantic City Railroad Company. The buildings were insured by the complainant company to the extent of $2,000, and, after the fire, complainant paid defendant the full amount of the insurance on the building, the replacement cost of which, according to the undisputed testimony, would be $4,575, and received from defendant an assignment of any right of action, to the extent of the payment, which he might have against any person responsible for the loss. Subsequently, defendant compromised his claim against the railroad company and was paid $5,000, for, as he testified, his "damage to goods that were destroyed that never was insured," and gave the company a release and discharge from all claims and demands which he had against it for damages for the destruction of both buildings and contents. When the settlement was made with the railroad company, it knew that complainant had paid $2,000 on account of the loss resulting from the burning of the buildings as required by its policy. The total loss suffered by defendant, on buildings and contents, exceeded $7,000. With the facts, substantially as stated, the complainant filed its bill of complaint praying that defendant be decreed to refund to it the $2,000 paid him, upon the ground that it was estopped by defendant's release to the railroad company from proceeding in his name to recover from it the unpaid damages for which the company was liable, which complainant claims it is entitled to by right of subrogation. The vice-chancellor held that the legal effect of the release was to bar complainant of its right to proceed in defendant's name against the railroad company, and decreed that the defendant must refund the $2,000, leaving him but $5,000 on account of a

loss which it is not disputed exceeded $7,000. We are of opinion that this result is not equitable, for the release was not, under the facts, a bar which estopped the complainant from asserting its right as subrogee. Both defendant and the railroad company knew, or are chargeable with knowledge, that the complainant had upon payment become entitled by subrogation to call upon the railroad company to reimburse it the money it paid the owner on its policy of insurance, and they could not defeat that right by any arrangement they might make without complainant's consent. If the loss for which the railroad company was liable amounted to $7,000, it has not liquidated its responsibility by paying $5,000, and until it has discharged its liability, the rights of a subrogee cannot be destroyed by obtaining a release upon paying to the insured what he deemed to be the residue of his loss, for a release of that nature is such a fraud upon the sub- rogee as will avoid it both at law and in equity, so far as it affects the rights of the subrogee. *Monmouth Fire Insurance Co.* v. *Hutchinson, 21 N. J. Eq. 107.* In that case, the buildings de- stroyed were insured for $1,800; the destruction was caused by sparks of fire negligently communicated by a railroad company and the loss amounted to $4,000. The owner was paid the insur- ance. With knowledge of this fact, the railroad company settled with the owner for $2,000 and took a full release and discharge. The insurance company then filed its bill of complaint, praying that the owner and the railroad company pay to it $1,800, the amount of the insurance it had paid; and it was there held that as the railroad company had not paid all the damages for which it was responsible, it was liable to the insurer to the extent of so much of its liability for the loss as still remained undischarged, and that a general release by the owner to the railroad company would be no defence to an action by the insurance company. This result removes the footing upon which the vice-chancellor rested the decree appealed from and requires us to consider the equities presented by this record which the vice-chancellor did not pass upon, because of the effect given by him to the release. Assuming, as we hold, that the release does not bar the com- plainant, as subrogee, from proceeding in the name of the owner

against the tort-feasor, and, as we must, under this record, that the latter has paid only so much of the entire loss for which it was responsible, as remained unsatisfied after applying to its payment the money received from the complainant, the only equitable basis upon which the complainant can rest its right to maintain this bill against the defendant is eliminated.

Where the owner has settled with a tort-feasor for less than its liability, in derogation of the rights of a subrogee, the latter may bring an action in the name of the owner, without his consent, to establish its liability, and out of any recovery be made whole for the amount paid, if the recovery so far extend. The suit must be in the name of the owner, and if there be more than one subrogee, the proceeds will be distributed equitably between them, for there is but one wrong, suffered by one party, the owner, and it can only be enforced in one suit and not by splitting the claim between several persons entitled to a part, because of different rights resting upon subrogation. *Norwich Union Fire Insurance Co.* v. *Standard Oil Co., 8 C. C. A. 433; 59 Fed. Rep. 984; Connecticut Mutual Life Insurance Co.* v. *New York and New Haven Railroad Co., 25 Conn. 265.* The complainant having chosen his forum, and submitted to its adjudication the question involved, it is concluded by the determination in this court of the issues presented and contested, so far as the parties to this record are concerned. That the complainant has chosen to attempt to charge the defendant upon the ground that the release was a bar, rather than proceed at law against the tort-feasor to establish the extent of its liability, does not concern the defendant. He has met the issue presented and shown that his loss exceeds the sums paid both by the railroad company and by the complainant, and therefore he is not liable to his subrogee, for the right of the complainant is against the fund resulting from the liability of the tort-feasor in excess of the amount received to fully compensate the owner, and if there be no such excess, then there is nothing to which it can be subrogated.

The decree will be reversed and the record remitted with a direction that the bill be dismissed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS —14.