(No. 49796.-

THE HOME INSURANCE COMPANY, Appellant, v. THE HERTZ CORPORATION *et al.*, Appellees.

*Opinion filed April 3, 1978.*

Rance V. Buehler and Philip W. Domagalski, of Chicago, for appellant.

Paul D. Frenz and Elias N. Matsakis, of McBride, Baker, Wienke & Schlosser, of Chicago, for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, an auto insurer, filed this subrogation action in the circuit court of Cook County, seeking to recover from defendants certain payments plaintiff made to its insured under the property damage and medical payments provisions of the insured's auto policy. Defendants moved to dismiss, raising as a bar a general release running from the insured to defendants. The circuit court dismissed the complaint and the appellate court affirmed (49 Ill. App. 3d 569), citing an "unbroken line of Illinois appellate

court cases which support the circuit court's ruling that plaintiff's claim is barred by the insured's release to the defendants" (49 Ill. App. 3d 569, 571). We granted leave to appeal and now reverse.

Plaintiff-insurer alleged that on August 2, 1974, defendant Gary L. Gardner, an employee of defendant Ingram Barge, Inc., negligently drove an automobile owned by defendant Hertz Corporation so as to injure plaintiff's insured and damage his auto. Plaintiff also alleged that it paid its insured's property damage and medical payments policy claims in the amount of $2,082.36 and that it thereby became subrogated to the interests of the insured to the extent of those payments. Ingram submitted in support of its motion to dismiss a full and final release of all personal injury and property damage claims arising from the accident, which release was executed by the insured in consideration of the payment to him of $6,000. It is not disputed that this release had been executed by the insured in connection with the settlement of his separate suit against the defendants here for personal injury damages and the $100 property damage paid by him under his deductible clause, and that no recovery had been sought in that suit for the property damage paid by the insurer. It is also undisputed that defendants had notice of plaintiff's subrogation rights prior to the settlement of the insured's suit and the signing of the release.

The precise question before us is whether an unlimited general release by an insured of all claims against a tortfeasor bars a subrogation action by an insurer-subrogee against that tortfeasor, where the tortfeasor procures the release from the insured-subrogor with knowledge of the insurer's interest.

It is true as defendants contend that the appellate court authority in this State supports their position. The appellate court here relied on *Inter Insurance Exchange of Chicago Motor Club v. Andersen* (1947), 331 Ill. App.

250, and two subsequent appellate decisions which cite *Andersen* with approval. (*St. Louis Fire & Marine Insurance Co. v. Garnier* (1960), 24 Ill. App. 2d 408; *Shaw v. Close* (1968), 92 Ill. App. 2d 1.) In *Andersen*, the insurer, after paying its insured under a collision policy, brought a subrogation action against the tortfeasor for property damage to the insured's automobile; it also joined the insured as a defendant, alleging that, by executing the release, he failed to protect the insurer's subrogation rights as required by the insurance contract. The tortfeasor invoked a release, signed only by the insured, as a bar to the insurer's action. Faced with deciding whether the tortfeasor or the insured should protect the insurer's subrogation interest, the appellate court chose the insured because he had a contractual relationship with the insurer while the tortfeasor did not. The court in *Andersen* acknowledged that "[t]he general rule seems to be that where the wrongdoer procures a release from the insured with knowledge that the insurance has been paid, the release is no bar to an action by the subrogee insurer against the wrongdoer" (331 Ill. App. 250, 254), but it found that "[t]he goal of prudence in one's conduct would seem to be reached more truly by making the insured duty bound to refrain from executing a release except with the approval of the insurer" (331 Ill. App. 250, 256).

While our appellate court has adhered to this position, authority elsewhere is to the contrary, allowing the insurer to recover from the tortfeasor. *Sentry Insurance Co. v. Stuart* (1969), 246 Ark. 680, 439 S.W.2d 797; *Collins v. Mobile & Ohio R.R. Co.* (1923), 210 Ala. 234, 97 So. 631; *Mitchell v. Holmes* (1935), 9 Cal. App. 2d 461, 50 P.2d 473; *Bahn v. Shalev* (D.C. 1956), 125 A.2d 678; *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Home Insurance Co.* (1915), 183 Ind. 355, 108 N.E. 525; *Sharp v. Bannon* (Ky. App. 1953), 258 S.W.2d 713; *Pennsyl-*

*vania Fire Insurance Co. v. Harrison* (La. App. 1957), 94 So. 2d 92; *Cleaveland v. Chesapeake & Potomac Telephone Co.* (1960), 225 Md. 47, 169 A.2d 446; *Wolverine Insurance Co. v. Klomparens* (1935), 273 Mich. 493, 263 N.W. 724; *Travelers Indemnity Co. v. Vaccari* (1976), ——— Minn. ———, 245 N.W.2d 844; *General Exchange Insurance Corp. v. Young* (1948), 357 Mo. 1099, 212 S.W.2d 396; *Omaha & Republican Valley Ry. Co. v. Granite State Fire Insurance Co.* (1898), 53 Neb. 514, 73 N.W. 950; *Davenport v. State Farm Mutual Automobile Insurance Co.* (1965), 81 Nev. 361, 404 P.2d 10; *Fire Association v. Wells* (1915), 84 N.J. Eq. 484, 94 A. 619; *Ocean Accident & Guarantee Corp. v. Hooker Electrochemical Co.* (1925), 240 N.Y. 37, 147 N.E. 351; *Nationwide Mutual Insurance Co. v. Canada Dry Bottling Co.* (1966), 268 N.C. 503, 151 S.E.2d 14; *Motorists Mutual Insurance Co. v. Gerson* (1960), 113 Ohio App. 321, 177 N.E.2d 790; *Aetna Casualty & Surety Co. v. Associates Transports, Inc.* (Okla. 1973), 512 P.2d 137; *United Pacific Insurance Co. v. Schetky Equipment Co.* (1959), 217 Ore. 422, 342 P.2d 766; *Hospital Service Corp. v. Pennsylvania Insurance Co.* (1967), 101 R.I. 708, 227 A.2d 105; *Calvert Fire Insurance Co. v. James* (1960), 236 S.C. 431, 114 S.E.2d 832; *Continental Ins. Co. v. Weinstein* (1953), 37 Tenn. App. 596, 267 S.W.2d 521; *Wichita City Lines, Inc. v. Puckett* (1956), 156 Tex. 456, 295 S.W.2d 894.

The difficulty with the *Andersen* rule, in our opinion, is that its application in the circumstances here is fundamentally unfair to both the insured and his insurer. Denied enforcement of its subrogation rights against the real wrongdoer, the insurer must instead seek recovery from its own insured, an obviously unpalatable alternative. Thus the tortfeasor and his own liability insurer, if any, escape payment for damage caused by the tortfeasor, while the tort victim is effectively denied payment from his own

insurance carrier *and* from the tortfeasor. The *Andersen* rule in these circumstances constitutes a trap for the unwary insured plaintiff. While no fraud is alleged here, the rule itself encourages fraud or, at the very least, sharp practice on the part of the tortfeasor or his insurance carrier. The insured may be an unsophisticated, unrepresented party presented with a full and final release which he is told he must sign in order to effect a needed settlement. To require him to execute a release of all claims, even though the tortfeasor has knowledge of the insurer's interest and the probable existence of a standard insurance policy provision obligating the insured to protect the insurer's subrogation rights, is simply not consistent with fair dealing and ought not to be encouraged. In short, adoption of the *Andersen* rule would (1) permit the tortfeasor to escape liability for the amounts paid by the insurer, (2) require the tort victim to go uncompensated as to the amounts paid by the insurer even though he has paid insurance premiums and has also suffered loss at the hands of the tortfeasor defendant, (3) force the insurer to sue his own injured insured, and (4) place a premium on sharp practice and dishonesty. Simply put, the *Andersen* rule produces, in our judgment, an inequitable result and ought not to be applied in the circumstances before us.

It was put considerably stronger many years ago when the Supreme Court of Michigan, quoting Lawyers' Reports Annotated, noted that:

> " 'It is too well settled to render the citation of authorities necessary that, as between an insurer and a tortfeasor who has caused a loss of the insured property, the latter is ultimately liable for the loss, and that upon payment to the insured by the insurer the latter is entitled to be subrogated pro tanto to the insured's right against the tortfeasor. With this right in view the authorities are agreed that where, with knowledge of a

previous settlement by the insurer with the insured, a tortfeasor who is responsible for the loss procures a release by making a settlement with the insured, the release amounts to a fraud upon the insurer's right, and therefore constitutes no defense as against the insurer in an action to enforce its right of subrogation against the tortfeasor.

\*\*\*' [Annot., 1916A L.R.A. 1282-83 (1916).]" *Wolverine Insurance Co. v. Klomparens* (1935), 273 Mich. 493, 496-97, 263 N.W. 724, 725.

We accordingly hold that an unlimited release executed by an insured-subrogor for consideration not specifically including an amount designated as covering the insurer's subrogation interest does not bar a subsequent subrogation action by an insurer-subrogee against the tortfeasor, if the tortfeasor or his insurance carrier had knowledge of the insurer-subrogee's interest prior to the release.

The judgments of the circuit and appellate courts are accordingly reversed, and the cause is remanded to the circuit court of Cook County for further proceedings consistent herewith.

*Reversed and remanded.*