**IMPERIAL CASUALTY & INDEMNITY COMPANY, Plaintiff and Appellant,**

**v.**

**GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant and Appellee.**

**Civ. No. 900071.**

Supreme Court of North Dakota.

July 3, 1990.

Zuger, Kirmis, Bolinske & Smith, Bismarck, for plaintiff and appellant; argued by Thomas O. Smith, Bismarck.

Bucklin Trial Lawyers, P.C., Bismarck, for defendant and appellee; argued by Clark J. Bormann, Bismarck.

VANDE WALLE, Justice.

Imperial Casualty & Indemnity Company (Imperial) sued General Casualty Company of Wisconsin (General) for reimbursement of no-fault benefits Imperial paid to its insured, Anthony Kulig. The parties filed cross motions for summary judgment. The district court entered a summary judgment

of dismissal from which Imperial has taken this appeal. For the reasons stated in this opinion we amend the judgment, and as amended, we affirm.

The parties have stipulated to the facts. On June 28, 1985, Anthony Kulig and Carolyn Tinjum were driving vehicles that collided at an intersection in Grand Forks, and as a result of the accident Kulig sustained serious bodily injury.

Kulig's vehicle was insured by Imperial and Tinjum's vehicle was insured by General. Kulig had optional excess no-fault benefits of $25,000 in addition to the $15,000 basic benefits required by statute. Tinjum's insurance policy included liability coverage of $100,000 per person and $300,000 per accident. During the ensuing months Imperial paid no-fault insurance benefits to Kulig for economic loss totaling $40,000. Imperial notified General that it had made these payments and that it was seeking reimbursement from General.

Kulig and his wife, Mary, who was a passenger in his car at the time of the accident, sued Tinjum for damages sustained in the motor vehicle accident. The lawsuit was ultimately settled. The Kuligs received $37,500 from General in settlement of their claims against Tinjum, and executed a release expressly discharging Tinjum and General from any further claims relating to the accident. Imperial was not a party to the settlement nor was it given prior notice of the settlement.

General notified Imperial in writing of its position regarding Imperial's request for reimbursement of no-fault benefits. General agreed that Imperial has a right of reimbursement for basic no-fault benefits up to a maximum of $15,000 "subject to either litigation or arbitration regarding the reasonableness and the necessity of those payments." General's position was that Imperial only had a right of subrogation to recover the $25,000 of optional excess no-fault benefits paid to Kulig, to the

extent of Kulig's right to recover against a responsible third party. General stated that because Kulig had executed a release in favor of Tinjum and General, Imperial must seek reimbursement, if at all, against Kulig, its insured, from the $37,500 settlement.

Imperial filed this action against General for reimbursement of the entire $40,000 of no-fault benefits Imperial had paid to Kulig. On cross motions for summary judgment the trial court agreed with General that under North Dakota law Imperial must arbitrate with General for reimbursement of the $15,000 basic no-fault benefits. The court also determined that the Kuligs' release "exonerated" General from further liability and that Imperial's subrogation claim against General for the $25,000 of optional excess no-fault benefits "died also." The trial court entered a summary judgment dismissing, on its merits, Imperial's claim against General, from which Imperial has taken this appeal.

Imperial asserts on appeal that under Chapter 26–41, N.D.C.C.,[1] the North Dakota Auto Accident Reparations Act, Imperial is entitled to reimbursement from General of the $40,000 in no-fault benefits that Imperial paid to Kulig.

"Basic no-fault benefits" are defined as benefits for economic loss resulting from accidental bodily injury and are limited to $15,000 per person for any one accident. Section 26–41–03, N.D.C.C. A basic no-fault insurer of a secured motor vehicle must pay no-fault benefits, without regard to fault, for economic loss resulting from accidental bodily injury to persons occupying the insured motor vehicle. Section 26–41–07, N.D.C.C.

Under Section 26–41–03, N.D.C.C., a "secured motor vehicle" is a vehicle which, at the time of the accident, is insured as required by the chapter and a "secured person" is the owner, operator, or occupant of a secured motor vehicle. By those defi-

1. The motor vehicle accident in this case occurred on June 28, 1985. At that time North Dakota's no-fault insurance law was codified under Chapter 26–41, N.D.C.C., and all references in this opinion are to the provisions under that chapter as they existed on the day of the accident. During the 1985 legislative session, the no-fault law was recodified under Chapter 26.1–41, N.D.C.C.

nitions Tinjum was a secured person at the time her vehicle collided with Kulig's vehicle. For basic no-fault benefits paid to an injured person, an insurer is subrogated to the rights of the injured person against a defendant tortfeasor "other than a secured person." Section 26–41–13, N.D.C.C. A secured person is exempt from liability to pay damages for economic loss to the extent that the injured person receives basic no-fault benefits. Section 26–41–12, N.D.C.C.; *Moser v. Wilhelm*, 300 N.W.2d 840 (N.D.1980).

 These statutory provisions are clear and unambiguous. With regard to basic no-fault benefits (no-fault benefits up to $15,000), a tortfeasor whose vehicle carries the required insurance is exempt from liability to pay for the injured person's economic loss which is covered by basic no-fault benefits. The insurer who has paid basic no-fault benefits to the injured person has no right of subrogation against a tortfeasor who is a secured person. That insurer's right to recover basic no-fault benefits paid to the injured person is limited to the terms and conditions set forth under Section 26–41–14, N.D.C.C.:

"*26–41–14. Equitable allocation of losses among insurers.*—A basic no-fault insurer shall have a right to recover basic no-fault benefits paid to or for the benefit of an injured person from the motor vehicle liability insurer of a secured person if:

"1. The injured person has sustained a serious injury; or

"2. The injury results from an accident involving two or more motor vehicles, at least one of which is a motor vehicle weighing more than six thousand five hundred pounds [2,948.35 kilograms] unloaded.

*"The right of recovery and the amount thereof shall be determined* on the basis of tort law without regard to section 26–41–12 *by agreement between the ba-*

*sic no-fault insurers involved, or, if they fail to agree, by binding intercompany arbitration* under procedures approved by the commissioner of insurance. The amount of recovery under this section shall not exceed the limits of liability of the secured person's motor vehicle liability insurance policy or other security, reduced by the amount of the liability for tort claims against the secured person covered by the policy or other security." (Emphasis added.)

It is undisputed that Anthony Kulig sustained serious injury in the accident.[2] Consequently, it appears that Imperial has a right to recover from General the amount of basic no-fault benefits Imperial paid to Kulig. The statute unambiguously provides, however, that both the right of recovery and the amount of recovery must be determined between the no-fault insurers and, absent agreement, by binding intercompany arbitration. Imperial must pursue reimbursement for its basic no-fault payments through arbitration.[3]

 In its action against General, Imperial also sought reimbursement for the $25,000 of optional excess no-fault benefits that it paid to Kulig. The relevant statutory provision is Section 26–41–06, N.D. C.C.:

"Each basic no-fault insurer of the owner of a secured motor vehicle shall also make available optional excess no-fault benefits for excess economic loss commencing upon the exhaustion of basic no-fault benefits, up to a total of forty thousand dollars in no-fault benefits for accidental bodily injury to any one person in any one accident.... The optional excess no-fault benefits of a basic no-fault insurer may provide that it be subrogated to the injured person's right of recovery against any responsible third party."

---

**2.** Under Section 26–41–03, N.D.C.C., serious injury is defined, in part, as injury which results in medical expenses in excess of one thousand dollars.

**3.** Imperial argues that if litigation is pursued to recover excess optional no-fault benefit payments, then reimbursement for basic no-fault benefits should be determined in the same litigation. This is a policy argument which must be directed to the Legislature.

The Kuligs' insurance policy with Imperial, which provided optional excess no-fault benefit coverage, contained a subrogation clause in favor of Imperial for benefits paid under the policy. Imperial had a contractual right of subrogation, for the $25,000 of optional excess no-fault benefits paid to Kulig. Under general subrogation principles, when the Kuligs settled their tort action against Tinjum and executed a release exempting Tinjum and General from further liability associated with the accident, Imperial's subrogation rights were extinguished. *See Farmers Insurance Exchange v. Arlt*, 61 N.W.2d 429 (N.D.1953); *see also State Farm Mutual Automobile Insurance Company v. Lou*, 36 Wash.App. 838, 678 P.2d 339 (1984); *Amica Mutual Insurance Company v. Barton*, 1 Conn. App. 569, 474 A.2d 104 (1984).

Several jurisdictions recognize an exception to this general principle. They have held that when a tortfeasor or the tortfeasor's liability insurer, with notice of the subrogation claim of the injured party's insurer, procures a general release by settling with the injured person in the absence of that person's insurance company, the release will not affect the subrogation rights of the injured party's insurance company. *Leader National Insurance Company v. Torres*, 113 Wash.2d 366, 779 P.2d 722 (1989); *Dickhans v. Missouri Property Insurance Placement Facility*, 705 S.W.2d 104 (Mo.App.1986); *Home Insurance Company v. Hertz Corp.*, 71 Ill.2d 210, 16 Ill. Dec. 484, 375 N.E.2d 115 (1978); *Travelers Indemnity Company v. Vaccari*, 310 Minn. 97, 245 N.W.2d 844 (1976). In explaining the rationale for this rule the Missouri Court of Appeals states in *Dickhans, supra:*

> "[I]t would be patently unjust to permit a third party tortfeasor, with knowledge of an insurer's subrogation interest, to settle with the insured for less than the wrongdoer's full liability, and become thereby insulated against the insurer's right of action against the tortfeasor." 705 S.W.2d at 106.

The Supreme Court of Minnesota in *Travelers, supra,* explains its rationale for applying the rule:

> "To hold that such a settlement destroys an insurer's subrogation rights would have the practical effect of encouraging a tortfeasor or his liability insurer to disregard notice of an insurer's valid subrogation claim and attempt to procure a general release from the insured. We believe that the tortfeasor and his liability insurer have a duty to act in good faith under such circumstances. Therefore, we hold that where a tortfeasor and his liability insurer willfully disregard notice of the subrogation claim of the injured person's insurer and enter into a separate settlement with the injured person, such a settlement does not defeat his insurer's subrogation rights." 245 N.W.2d at 848.

In *Inter Insurance Exchange of Chicago Motor Club v. Andersen*, 331 Ill.App. 250, 73 N.E.2d 12 (1947), the Illinois Court of Appeals held that a release given by the injured party to the defendant tortfeasor, who had knowledge of the injured party's insurance company's subrogation claim, prevented the insurer from enforcing its subrogation rights against the tortfeasor. Three decades later the Supreme Court of Illinois in the *Hertz, supra,* decision rejected *Andersen* and persuasively stated its reasons for doing so:

> "The difficulty with the *Andersen* rule, in our opinion, is that its application in the circumstances here is fundamentally unfair to both the insured and his insurer. Denied enforcement of its subrogation rights against the real wrongdoer, the insurer must instead seek recovery from its own insured, an obviously unpalatable alternative. Thus the tortfeasor and his own liability insurer, if any, escape payment for damage caused by the tortfeasor, while the tort victim is effectively denied payment from his own insurance carrier *and* from the tortfeasor. The *Andersen* rule in these circumstances constitutes a trap for the unwary insured plaintiff. While no fraud is alleged here, the rule itself encourages fraud or, at the very least, sharp practice on the part of the tortfeasor or his insurance carrier. The in-

sured may be an unsophisticated, unrepresented party presented with a full and final release which he is told he must sign in order to effect a needed settlement. To require him to execute a release of all claims, even though the tortfeasor has knowledge of the insurer's interest and the probable existence of a standard insurance policy provision obligating the insured to protect the insurer's subrogation rights, is simply not consistent with fair dealing and ought not to be encouraged. In short, adoption of the *Andersen* rule would (1) permit the tortfeasor to escape liability for the amounts paid by the insurer, (2) require the tort victim to go uncompensated as to the amounts paid by the insurer even though he has paid insurance premiums and has also suffered loss at the hands of the tortfeasor defendant, (3) force the insurer to sue his own injured insured, and (4) place a premium on sharp practice and dishonesty." 16 Ill.Dec. at 486–487, 375 N.E.2d at 117–118.

Tinjum and her insurer, General, were expressly notified by Imperial prior to their settlement with the Kuligs that Imperial had a right of subrogation which it fully intended to exercise. Furthermore, prior to the settlement, the Kuligs' attorney and Tinjum's attorney agreed that no evidence would be introduced of damages for which Kulig had received no-fault benefits. There is no indication in the record that any part of the $37,500 the Kuligs received in settlement of their action against Tinjum was paid to the Kuligs for purposes of reimbursing Imperial for the excess no-fault benefits it had paid to the Kuligs. Also, the settlement in this case did not exhaust the limits of Tinjum's liability insurance policy with General. Under these circumstances, we hold that the release executed by the Kuligs did not extinguish Imperial's right of subrogation against Tinjum for the excess no-fault benefits Imperial paid to Kulig. Furthermore, the release did not absolve General of its obligations as Tinjum's insurer with regard to Imperial's subrogation claim.

In accordance with Section 26–41–06, N.D.C.C., Imperial is contractually subrogated to its insured's right of recovery against "any responsible third party." However, Imperial filed this action against General, rather than Tinjum, the alleged tortfeasor and "responsible third party" for the Kuligs' damages. General's liability is contingent upon the liability of Tinjum, its insured. Consequently, we affirm the district court's dismissal of Imperial's action against General, but amend the judgment to provide that it is without prejudice to Imperial's right to bring an action against Tinjum to pursue its right of subrogation to recover the excess no-fault benefit payments.

Judgment amended, and, as amended, affirmed.

ERICKSTAD, C.J., and GIERKE, LEVINE and MESCHKE, JJ., concur.