# Illinois Official Reports

## Appellate Court

> ### *State Farm Mutual Automobile Insurance Co. v. Easterling*,
> ### 2014 IL App (1st) 133225

| | |
|---|---|
| Appellate Court Caption | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant, v. SHEENA L. EASTERLING and JANET K. WIGGINS, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-3225 |
| Filed | September 18, 2014 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an automobile accident in which plaintiff's insured suffered physical injuries and damage to his vehicle due to defendant's negligence, and plaintiff insurer and its insured signed a release for a check issued in the settlement of the insured's personal injury action against defendant tortfeasors that did not specifically include an amount designated to cover plaintiff insurer's subrogation interest in the damage to its insured's vehicle, that release did not bar plaintiff insurer from bringing a subrogation action against the tortfeasors for the property damage incurred by plaintiff's insured, especially when defendants were aware of plaintiff's subrogation claims before they filed their personal injury action. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-MI-017464; the Hon. James Snyder, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Frank Stevens, of Taylor Miller LLC, of Chicago, for appellant.

Keely Hillison, of Parrillo, Weiss & O'Halloran, of Chicago, for appellees.


Panel

JUSTICE TAYLOR delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Epstein concurred in the judgment and opinion.

**OPINION**

¶ 1 Following an automobile accident in which Frank R. Krupa was injured by a car driven by defendant Sheena Easterling and owned by her mother, defendant Janet K. Easterling-Wiggins,[1] plaintiff State Farm Mutual Automobile Insurance Company (State Farm) paid Krupa's medical expenses and property damage and then sought reimbursement through subrogation rights from defendants' insurer, Safeway Insurance Company (Safeway). Prior to this suit, Krupa had filed a personal injury suit against Sheena Easterling, the parties settled for $20,000, and Krupa signed a general release. State Farm endorsed the settlement check resulting from that suit. State Farm's present subrogation suit against defendants was dismissed because of the prior settlement between Krupa and Easterling. This appeal followed. On appeal, defendants argue that, by signing the settlement check, State Farm gave up all its subrogation rights. State Farm argues that the settlement check only covered damages for bodily injury; therefore, it still has subrogation rights for property damage.

¶ 2                                    BACKGROUND

¶ 3 On February 13, 2009, a car owned and driven by Frank Krupa was struck by a car driven by Sheena Easterling and owned by her mother, Janet K. Easterling-Wiggins. The collision caused injury to Krupa and damage to Krupa's car. Plaintiff insured Krupa's car and paid for the property damage minus the deductible.

¶ 4 On February 26, 2009, plaintiff sent Safeway a letter in which it stated: "We have been informed that you are the insurance carrier for Janet Easterling-Wiggins. Our investigation of this accident establishes that your insured, Janet Easterling-Wiggins, was responsible for this accident. Please accept this letter as notice of our subrogation rights. Should we make payments under our policy, we will be looking to you for reimbursement."

¶ 5 On April 24, 2009, Safeway sent a letter to plaintiff stating: "This will acknowledge receipt of your subrogation claims. Our investigation is complete, we can settle this claim for $7,147.92." The letter further indicated that all offers were pending management approval. It

_____

[1] Although the caption refers to defendant as Janet K. Wiggins, the parties in their briefs consistently refer to her as Janet K. Easterling-Wiggins.

further stated, "Please be advised that we require a property damage release before issuing payment ***."

On August 11, 2009, Krupa filed a lawsuit (the Krupa suit) against Sheena Easterling for personal injuries, medical expenses, and lost wages. In paragraph 8, he alleged that he "sustained property damage and had to expend monies for alternative means of transportation." Janet K. Easterling-Wiggins was not a defendant in this suit.

On October 19, 2009, plaintiff filed a subrogation action against defendants to recover its payments. This lawsuit was the predecessor to the instant lawsuit. We shall refer to this suit as "State Farm I." Plaintiff alleged that it had paid for part or all of the personal injuries, medical expenses, and property damage incurred by Krupa as a result of the February 13, 2009 traffic accident pursuant to the Illinois motor vehicle liability statute, which states:

"(b) Owner's policy.–Such owner's policy of liability insurance:

* * *

3. Shall insure every named insured and any other person using or responsible for the use of any motor vehicle owned by the named insured and used by such other person with the express or implied permission of the named insured on account of the maintenance, use or operation of any motor vehicle owned by the named insured, within the continental limits of the United States or the Dominion of Canada against loss from liability imposed by law arising from such maintenance, use or operation, to the extent and aggregate amount, exclusive of interest and cost, with respect to each motor vehicle, of $20,000 for bodily injury to or death of one person as a result of any one accident and, subject to such limit as to one person, the amount of $40,000 for bodily injury to or death of all persons as a result of any one accident and the amount of $15,000 for damage to property of others as a result of any one accident." 625 ILCS 5/7-3179(b)(3) (West 2008).

Plaintiff also alleged that it was assigned all claims and demands against defendants for such loss and expenses, under an insurance policy and by virtue of common law rights of subrogation due to plaintiff's payment of insured's expenses. Plaintiff also claimed it was subrogated to the amount of the insured's deductible pursuant to section 143b of the Illinois Insurance Code, which states in pertinent part:

"§ 143b. Any insurance carrier whose payment to its insured is reduced by a deductible amount under a policy providing collision coverage is subrogated to its insured's entire collision loss claim including the deductible amount unless the deductible amount has been otherwise recovered by the insured, but if the deductible amount has been otherwise recovered by the insured it shall not be included in the subrogated loss claim and shall be excluded from the amount of loss pleaded. If the deductible amount is included in the subrogated loss claim the insurance carrier shall pay the full pro rata deductible share to its insured out of the net recovery on the subrogated claim. Administrative expenses of the insurance carrier cannot be deducted from the gross recovery, and only incurred expenses of the carrier, such as attorney's fees, collection fees and adjuster's fees, may be deducted therefrom to determine the net recovery. When the insurance carrier is recovering directly from a third party a claim by means of installments, the insured shall receive his full pro rata deductible share as soon as such amount is collected and before any part of such recovery is applied to any other use." 215 ILCS 5/143b (West 2008).

¶ 9    Plaintiff also alleged that it had paid for the damages, losses and expenses of its insured (Krupa), that the insured incurred a deductible and that plaintiff was now the subrogee for the amounts paid by plaintiff. State Farm then asked for an award in the amount of $8,073.30.

¶ 10    Subsequently, a settlement was reached in the Krupa suit. On March 24, 2011, that lawsuit was dismissed with prejudice pursuant to settlement, with the court expressly retaining jurisdiction to adjudicate liens and stating that the case had been settled for the policy limit of $20,000. On March 31, 2011, Krupa executed a general release for Sheena Easterling and Safeway. The release did not mention plaintiff or its subrogation claim and it did not release Janet K. Easterling-Wiggins. The general release stated, in pertinent part:

"Frank Krupa, (hereinafter referred to as 'Plaintiff'), for and in consideration of Twenty-Thousand Dollars ($20,000.00), receipt of which is hereby acknowledged, does hereby for himself and for his heirs, executors, administrators, successors and assigns release, remise and forever discharge Sheena Easterling and Safeway Insurance Company and their affiliates, subsidiaries, successors, agents, servants, officers, directors, and employees of and from all manner of actions, proceedings, causes of action, claims for more money damages, suits, debts, property damages, loss of property, foreseen and unforeseen bodily and personal injuries and emotional distress and the consequences thereof, judgments, claims and demands, whatsoever of any nature, and of every kind and description, choate and inchoate, in law or in equity, which he now has or ever had, or hereafter can, shall or may have, for, upon or by reason of any matter, cause or thing resulting from, relating to or caused by any of the following: all matters alleged, claimed or referred to in a lawsuit regarding an auto accident which happened on or about the 13th day of February, 2009, on the I-90/94 Dan Ryan Expressway, Chicago, Illinois brought in the Circuit Court of Cook County, Illinois entitled: Frank Krupa v. Sheena Easterling under docket no: 09 L 9475.

Plaintiff agrees to pay-off, satisfy, and discharge any and all claims for liens upon or against the settlement amount described above, including any lien asserted by a public agency, doctor, hospital, or other health care provider for services rendered or provided in connection with the injuries to Plaintiff. Plaintiff agrees to indemnify, defend and hold harmless Sheena Easterling and Safeway Insurance Company, their affiliates, subsidiaries, successors, agents, servant, officers, directors, and employees from and against any claim for a lien upon or against the settlement amount."

¶ 11    On April 25, 2011, Safeway issued a $20,000 settlement check payable to Frank Krupa, his attorney, Anthony J. Peraica and Associates, Ltd., City of Chicago Medical Plan, MacNeal Health Network, State Farm, and Neurological Surgery and Spine Surgery, S.C. The following text appears appear on the face of the check: "Full and final settlement BI claim for accident on 2/13/09 at I-94, Chicago, IL." It also contained the text "Coverage BI." Plaintiff asserts that "BI" stands for "bodily injury."

¶ 12    On May 24, 2011, plaintiff sent Krupa's attorney, Brady Kosic of Anthony J. Peraica and Associates, Ltd., a limited power of attorney to act on behalf of plaintiff by endorsing the settlement check. Plaintiff wrote two letters waiving its subrogation rights with respect to the benefits it paid Krupa under the medical payments coverage of his policy. The first letter stated:

"This letter provides you, Brady Kosic, Limited Power of Attorney to act on behalf of State Farm Mutual Automobile Insurance Company, hereinafter, State Farm, by

- 4 -

endorsing a check from Safeway Insurance in the amount of $20,000.00. This limited power of attorney is only to be exercised to endorse the check described above on behalf of State Farm. This limited power of attorney expires once exercised for the described purpose.

In return for using the limited power of attorney, you agree to pay State Farm $zero. The amount of your check to us represents our agreed upon portion of the settlement received from Safeway Insurance."

In another letter of the same date also addressed to Brady Kosic, plaintiff stated: "This letter will confirm our conversation wherein we agreed State Farm would release any and all rights of recovery it has related to the Medical Payments coverage for your client Frank R. Krupa in this matter."

¶ 13 On December 6, 2012, plaintiff voluntarily dismissed its original lawsuit. The order provided that "this matter is dismissed without prejudice and with leave to refile." Plaintiff filed a new complaint on December 21, 2012, seeking to recover property and medical expenses incurred by Krupa in the February 13, 2009, traffic accident with defendants. State Farm alleged it had paid on behalf of the insured (Krupa) various monies for damages, losses and expenses totaling the sum of $10,967.42 and that plaintiff was now the actual *bona fide* subrogee for the amounts so paid by plaintiff and that the insured had incurred a deductible.

¶ 14 On February 13, 2013, defendants filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure, arguing that "this matter was previously filed, settled, dismissed with prejudice and paid" in State Farm I. 735 ILCS 5/2-619 (West 2010).

¶ 15 On May 1, 2013, the court ordered plaintiff to provide proof of Safeway's knowledge regarding plaintiff's subrogation interest. Plaintiff subsequently filed a copy of the above mentioned letter dated February 26, 2009, informing Safeway of State Farm's subrogation rights, and a copy of Safeway's letter of April 24, 2009, stating acknowledgment of State Farm's subrogation rights.

¶ 16 On May 22, 2013, the court granted defendants' motion to dismiss with prejudice. Plaintiff filed a motion for rehearing which was denied on September 9, 2013. This appeal followed.

¶ 17                                             ANALYSIS

¶ 18 Plaintiff argues that the trial court erred in granting defendants' motion to dismiss, because its limited power of attorney regarding the settlement check in the Krupa suit only pertained to bodily injury payments and did not waive its subrogation rights as to property damage payments. Plaintiff also maintains that the general release signed by Krupa does not operate as a waiver of plaintiff's subrogation rights. Defendants maintain that plaintiff, by giving power of attorney to its insured's attorney to endorse the settlement check for $20,000, has waived its subrogation rights as to all claims related to the accident from February 13, 2009, not just the bodily injury claims. They further maintain that the parties to the Krupa suit intended to release all claims related to the accident and that plaintiff's mistake about the claims settled, released and paid is not a valid reason to reinstate any of the claims.

¶ 19 A motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2000)) admits the legal sufficiency of the plaintiff's claim, but asserts certain defects or defenses outside the pleading to defeat the claim. *Provenzale v. Forister*, 318 Ill. App. 3d 869, 878 (2001). The questions a court must consider where a section 2-619 dismissal

is challenged on appeal are whether a genuine issue of material fact exists and whether the defendant is entitled to judgment as a matter of law. 735 ILCS 5/2-619 (West 2000); *Saichek v. Lupa*, 204 Ill. 2d 127, 134 (2003); *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). Our review of a dismissal under section 2-619 is *de novo. Id.*; *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 479 (2002).

¶ 20    The following principles are generally relevant to this appeal. " 'Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant.' " *Trogub v. Robinson*, 366 Ill. App. 3d 838, 842 (2006) (quoting Dan B. Dobbs, Law of Remedies § 4.3(4), at 604 (2d ed. 1993)). " 'Factually, the case arises because, for some justifiable reason, [a party] has paid a debt owed by the defendant.' " *Id.* (quoting Dan B. Dobbs, Law of Remedies § 4.3(4), at 604 (2d ed. 1993)). " 'Having paid the defendant's creditor, the [party] stands in the creditor's shoes *** and "is entitled to exercise all the remedies which the creditor possessed" against the defendant.' " *Id.* (quoting Dan B. Dobbs, Law of Remedies § 4.3(4), at 604 (2d ed. 1993), quoting *American Surety Co. of New York v. Bethlehem National Bank of Bethlehem*, 314 U.S. 314, 317 (1941)). " 'Thus, a subrogee merely succeeds to the legal rights or claims of a subrogor.' " *Trogub*, 366 Ill. App. 3d at 842 (quoting 73 Am. Jur. 2d *Subrogation* § 1, at 542 (2001)).

¶ 21    Subrogation rights originated in common law to prevent unjust or unearned enrichment of one party at the expense of another, but they may also be created by statute or contract. *Trogub*, 366 Ill. App. 3d at 842 (citing *Aames Capital Corp. v. Interstate Bank of Oak Forest*, 315 Ill. App. 3d 700, 706-07 (2000)). In the case of an insurance contract, subrogation rights arise where (1) a third party has caused a loss and is primarily liable to the insured for the loss, (2) the insurer is secondarily liable to the insured due to an insurance policy, and (3) the insurer pays the insured under that policy, thereby extinguishing the debt owed by the third party. *Id.*; *State Farm General Insurance Co. v. Stewart*, 288 Ill. App. 3d 678, 686-87 (1997).

¶ 22    We first consider plaintiff's contention that the limited authorization to Krupa's attorney to endorse the settlement check on its behalf was not a waiver of its subrogation rights as to property damage and does not bar plaintiff's subrogation suit. As discussed above, plaintiff filed its initial subrogation action against defendants (State Farm I) in municipal court. It later voluntarily dismissed that action and refiled its subrogation action on December 21, 2012. In that second suit, plaintiff asserted that Krupa was the owner and/or driver of the car damaged by Sheena Easterling in the collision and, as a result of Easterling's negligence, Krupa suffered personal injuries, pain and suffering, and lost wages as well as incurring medical and car repair expenses for which he was covered under the policy. Plaintiff claimed that it had paid on Krupa's behalf "various monies for [his] damages, losses and expenses and that Krupa had incurred a deductible, totaling the sum of $10,967.42." It stated that, pursuant to the policy, Krupa had assigned it all of his claims and demands against any party for his damage, loss or expenses. State Farm argued that it was now the "bona fide subrogee to the amounts" it had paid on Krupa's behalf and requested the court to award it a judgment of $10,967.42 plus costs against defendants.

¶ 23    Defendants claim that plaintiff has waived all such subrogation rights. Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 396 (1993). A waiver may

be either expressed or implied, arising from acts, words, conduct, or knowledge of the insurer. *Id.*; *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 499 (1985). An implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it. *Id.*; *Liberty Mutual Insurance Co. v. Westfield Insurance Co.*, 301 Ill. App. 3d 49, 53 (1998). Where there is no dispute as to the material facts and only one reasonable inference can be drawn, it is a question of law as to whether waiver has been established. *Id.*; *Liberty Mutual*, 301 Ill. App. 3d at 53. The failure of a paying insurer to reserve its rights against a nonpaying insurer may constitute a waiver of the right to equitable remedies. *Home Insurance Co.*, 213 Ill. 2d at 326-27; 15 Steven Plitt *et al.*, Couch on Insurance § 218:32 (3d ed. 2005). An insurer desiring to reserve its rights against a second insurer must make this position clear in its correspondence with the second insurer; it is also considered good practice to include such reservation language in any settlement agreement or order, then provide a copy of it to the nonsettling insurer. *Id.*

¶ 24 Defendants maintain that plaintiff's act of authorizing Krupa's attorney to endorse Safeway's settlement check, without placing any limitations or restrictions and without expressing any reservations whatsoever, was wholly inconsistent with any intention other than to waive all of plaintiff's subrogation rights. Relying on *Home Insurance Co.*, 213 Ill. 2d at 328, for the proposition that an insurer desiring to reserve its rights against a second insurer must make this position clear in its correspondence with the second insurer, defendants argue that plaintiff waived any subrogation claims by failing to notify the other insurer, Safeway, at the time of the underlying settlement, that plaintiff claimed anything more than the $20,000 settlement check issued by Safeway and endorsed by Krupa's attorney on behalf of plaintiff. Defendants further maintain that the settlement check was intended to resolve all of plaintiff's subrogation claims, since the check was made payable to plaintiff and others.

¶ 25 Plaintiff contends that the reason it was included in Safeway's check was because in addition to paying for damage to Krupa's car, plaintiff paid for some of Krupa's medical expenses pursuant to the medical payments coverage. Krupa's medical expenses were part of his bodily injury claim, and plaintiff was subrogated to that claim to the extent of its payments. Plaintiff acknowledges that it did waive its subrogation rights to any bodily injury claims by Krupa, as evidenced by its limited power of attorney to Krupa's attorney and also by the two letters that it sent to Safeway on May 24, 2011. However, it argues that such waiver was limited to bodily injury claims alone, as evidenced by its letter to Safeway stating "This letter will confirm our conversation wherein we agreed State Farm would release any and all rights of recovery it has related to the *Medical Payments coverage* for your client Frank R. Krupa in this matter." (Emphasis added.) As further support, plaintiff points out that the settlement check stated on its face that it was a "Full and Final Settlement BI claim," that is, a bodily injury claim only. Plaintiff also points out that the order entered in the Krupa suit on March 24, 2011 stated that the case had been settled for the policy limit. Under the Illinois motor vehicle liability statute, the amount of $20,000 could only be for bodily injury:

> "(b) Owner's policy.–Such owner's policy of liability insurance:
>
> * * *
>
> 3. Shall insure every named insured *** to the extent and aggregate amount, exclusive of interest and cost, with respect to each motor vehicle, of $20,000 for bodily injury to or death of one person as a result of any one accident and, subject to such limit as to one person, the amount of $40,000 for bodily injury to or death of all persons as a

result of any one accident and the amount of $15,000 for damage to property of others as a result of any one accident." 625 ILCS 5/7-317(b)(3) (West 2008).

¶ 26    Further, plaintiff maintains that the property damage claim was not part of Krupa's suit or settlement because it did not belong to Krupa, as evidenced by section 143b of the Illinois Insurance Code, which states in pertinent part:

"Any insurance carrier whose payment to its insured is reduced by a deductible amount under a policy providing collision coverage is subrogated to its insured's entire collision loss claim including the deductible amount unless the deductible amount has been otherwise recovered by the insured, but if the deductible amount has been otherwise recovered by the insured it shall not be included in the subrogated loss claim and shall be excluded from the amount of loss pleaded. If the deductible amount is included in the subrogated loss claim the insurance carrier shall pay the full pro rata deductible share to its insured out of the net recovery on the subrogated claim." 215 ILCS 5/143b (West 2008).

In this case, Krupa is the insured under the State Farm policy, and State Farm paid his medical expenses. Krupa accepted the benefits of that policy by allowing plaintiff to pay his medical expenses. The settlement check was for medical expenses as evidenced by the BI caption and the fact that the court order stated "policy limit $20,000." Further, plaintiff maintains that it is common practice for an insurer to authorize a claimant's attorney to endorse a check on its behalf, where the subrogation claim has been waived or agreed to. Therefore, for all these reasons, plaintiff argues that the limited power of attorney did not compromise the claim for property damage asserted.

¶ 27    We agree with plaintiff. In the case at bar, the record demonstrates that plaintiff did not commit any act that can reasonably be construed as a relinquishment by plaintiff of its property damage subrogation claim, or that Krupa effectively released plaintiff's property damage subrogation claims against Safeway. Instead, plaintiff consistently maintained its position that there was never a waiver of its property damage subrogation claim. As noted earlier, a waiver is comprised of a litigant's intentional relinquishment of a known right and it stems from a consensual and affirmative act by that litigant. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004). No such affirmative act appears in this case with regard to plaintiff's claim for property damage.

¶ 28    In fact, plaintiff correctly notes that the release given by Krupa did not designate any amount as covering plaintiff's subrogation claim and, therefore, does not bar its subrogation claim. Plaintiff maintains that Safeway knew of plaintiff's claim for property damage, evidenced by Safeway's letter of April 16, 2009, in which Safeway tried to settle that claim for $7,147.92. Plaintiff relies on *Home Insurance Co. v. Hertz Corp.*, 71 Ill. 2d 210, 215 (1978), where the plaintiff's insurer brought a subrogation suit to recover property damage and medical payments made to its insured as a result of an automobile accident. As in this case, the defendants moved to dismiss on the basis of a general release given by the insured in connection with a settlement between the insured and the defendants. As in this case, the defendants had notice of plaintiff's subrogation rights prior to settlement. The trial court granted the motion and the appellate court affirmed. However, our supreme court reversed, stating:

"We accordingly hold that an unlimited release executed by an insured-subrogor for consideration not specifically including an amount designated as covering the

insurer's subrogation interest does not bar a subsequent subrogation action by an insurer-subrogee against the tortfeasor, if the tortfeasor or his insurance carrier had knowledge of the insurer-subrogee's interest prior to the release." *Home*, 71 Ill. 2d at 215.

Likewise, in the present case, there was an unlimited release without a specific amount designating plaintiff's subrogation interest, which Safeway had knowledge of prior to the release signed by Krupa. Thus, plaintiff's subrogation action is not barred by the unlimited release.

¶ 29    Defendants nevertheless argue that the release and settlement check encompassed all property damage claims, because the settlement check was made payable to plaintiff. Further, defendants maintain that because plaintiff accepted the settlement by endorsing the settlement check, plaintiff's subrogation claims are extinguished. Defendants rely on *Rakowski* for the proposition that "one who purports to release all claims should clearly specify any that he intends and desires to reserve." (Emphasis and internal quotation marks omitted.) *Rakowski v. Lucente*, 104 Ill. 2d 317, 324 (1984). Defendants maintain that neither Krupa in executing the general release nor plaintiff in drafting its limited power of attorney to endorse the settlement check expressed any intention to exempt or preserve any property damage claim or subrogation claim. A release executed with knowledge of its meaning bars any cause of action covered by the release, with no exception for rights of subrogation. *Chicago Transit Authority v. Yellow Cab Co.*, 110 Ill. App. 3d 379, 383 (1982). Defendants maintain that the release and settlement check encompassed all property damage claims, and the fact that the settlement check was made payable to State Farm was sufficient to extinguish plaintiff's subrogation claims.

¶ 30    Plaintiff responds that the property damage subrogation claim was not part of Krupa's suit because it did not belong to Krupa. In Krupa's complaint, he did not assert a claim for the cost of repairing or replacing his car, but only for the cost of alternative transportation, which was a cost that is not covered under the collision coverage and was not paid by plaintiff. The claim for property damage was plaintiff's to make, both by the terms of the policy and by statute under the Illinois Insurance Code, which states, in pertinent part:

"Any insurance carrier whose payment to its insured is reduced by a deductible amount under a policy providing collision coverage is subrogated to its insured's entire collision loss claim including the deductible amount unless the deductible amount has been otherwise recovered by the insured, but if the deductible amount has been otherwise recovered by the insured it shall not be included in the subrogated loss claim and shall be excluded from the amount of loss pleaded. If the deductible amount is included in the subrogated loss claim the insurance carrier shall pay the full pro rata deductible share to its insured out of the net recovery on the subrogated claim. Administrative expenses of the insurance carrier cannot be deducted from the gross recovery, and only incurred expenses of the carrier, such as attorney's fees, collection fees and adjuster's fees, may be deducted therefrom to determine the net recovery. When the insurance carrier is recovering directly from a third party a claim by means of installments, the insured shall receive his full pro rata deductible share as soon as such amount is collected and before any part of such recovery is applied to any other use." 215 ILCS 5/143b (West 2008).

¶ 31     Plaintiff correctly points out that *Chicago* holds only that plaintiff Chicago Transit Authority was bound by a release that it signed. It does not support a claim that a plaintiff insurer could be bound by a release it did not sign and that was only signed by the insured. Under Illinois law, any claim not within the contemplation of the parties when a release is signed is not included therein. *Chicago*, 110 Ill. App. 3d at 383; *Mitchell v. Weiger*, 56 Ill. App. 3d 236 (1977).

¶ 32     As plaintiff notes, since there was no designation of a subrogee in the release of the claim, the subrogee's interests are not extinguished. *Home*, 71 Ill. 2d 210. "To require him to execute a release of all claims, even though the tortfeasor has knowledge of the insurer's interest and the probable existence of a standard insurance policy provision obligating the insured to protect the insurer's subrogation rights, is simply not consistent with fair dealing and ought not to be encouraged." *Home*, 71 Ill. 2d at 214. In the light of the above, we find plaintiff did not release its subrogation rights as to property damage but only to bodily damage.

¶ 33     Defendants argue that plaintiff's mistake as to the full extent and nature of the claims and liens being released and paid cannot alter the legal effect of the full release and payment of all claims. A unilateral or self-induced mistake is not a valid ground for setting aside a clear and unambiguous release. To accomplish that, a mutual mistake, material to the transaction and affecting its substance, must clearly and convincingly be established. *Rakowski*, 104 Ill. 2d at 324; *Hoops v. Fitzgerald*, 204 Ill. 325, 331 (1903); *Ogren v. Graves*, 39 Ill. App. 3d 620, 622 (1976). Defendants argue that plaintiff released its subrogation lien when it authorized Krupa's attorney to endorse the settlement check on its behalf.

¶ 34     Plaintiff responds that the release may bar a property damage claim asserted by Frank Krupa, but not plaintiff's claim. We agree. As noted above, "an unlimited release executed by an insured-subrogor for consideration not specifically including an amount designated as covering the insurer's subrogation interest does not bar a subsequent subrogation action by an insurer-subrogee." *Home*, 71 Ill. 2d at 215. Thus, contrary to defendants' claims, plaintiff did not make any mistake regarding the extent of the claims released in the Krupa settlement.

¶ 35     Defendants argue that the release encompassed all property damage claims and that plaintiff accepted the settlement by endorsing the settlement check and that all claims are extinguished. Plaintiff maintains that this sounds of accord and satisfaction and correctly argues that there was no accord and satisfaction of its claim for property damage because there was no evidence of a mutual intent to compromise the property damage claim. We agree with plaintiff.

¶ 36     An accord and satisfaction is generally defined as an agreement to discharge a debt or claim by some performance other than that which was originally due. *Kreutz v. Jacobs*, 39 Ill. App. 3d 515, 518 (1976); 1 C.J.S. *Accord and Satisfaction* § 2, at 458 (1985). It is distinguishable from a release in that a release is a relinquishment of a right, which may be given gratuitously or for inadequate consideration, while an accord and satisfaction is the discharge of a debt or claim by the acceptance of some payment which is agreed to constitute full satisfaction. 1 C.J.S. *Accord and Satisfaction* § 7, at 464 (1985). An accord and satisfaction is contractual in nature, and, as in all contracts, the intent of the parties is of central importance. *Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc.*, 103 Ill. App. 3d 380, 383-84 (1982). Thus, a transaction will constitute an accord and satisfaction of a claim only where both parties intend it to have that effect. *Amoco Oil Co. v. Segall*, 118 Ill. App. 3d 1002, 1012 (1983); 1 Am. Jur. 2d *Accord and Satisfaction* § 14, at 311 (1962). When a payment of less

than what is claimed is tendered and accepted, it will not constitute an accord and satisfaction of the entire claim unless it can be demonstrated that the creditor intended to accept it as full satisfaction. *Brubaker v. United States*, 342 F.2d 655, 661-62 (7th Cir. 1965). In the absence of such intent, the partial payment will operate as a discharge of only the amount paid, and the creditor will be entitled to maintain an action to recover the balance of his claim. 1 C.J.S. *Accord and Satisfaction* § 37, at 511-12 (1985).

¶ 37 Thus, the question to be decided in the case at bar is whether the parties intended the defendants' payment to operate as the full satisfaction of the plaintiff's claim. To determine the intent of the parties, it is necessary to examine the language of the order of satisfaction and release in light of the circumstances existing at the time of the transaction. *Hulke v. International Manufacturing Co.*, 14 Ill. App. 2d 5, 31 (1957); *Holman v. Simborg*, 152 Ill. App. 3d 453, 456 (1987). Here, as noted above, the release is silent on any amount covering the insurer. We, therefore, conclude that the language contained in the letter, when considered in light of the defendants and Krupa's knowledge, establishes that the plaintiff did not intend to accept the payment, which was waived as to bodily injury, as full satisfaction of its property damage claim. Thus, we find that no accord and satisfaction was effected at that time as between defendants and plaintiff and therefore, plaintiff was not barred from pursuing a judgment on its claim for property damage.

¶ 38 We find factual distinctions between the case at bar and the cases defendants rely on for the proposition that plaintiff was entitled to recoup its claims from the settlement funds. Defendants maintain that plaintiff was entitled to recoup its subrogation claims from the settlement funds. Relying on *Country Mutual Insurance Co. v. Birner*, 293 Ill. App. 3d 452, 455 (1997), defendants argue that since the subrogee insurer was named as a payee on the settlement check from the tortfeasors' insurer, the subrogation rights of the injured plaintiff's automobile insurer are subject to payment out of the settlement funds paid by the defendant tortfeasor's insurer. In *Country*, an attorney filed a personal injury suit on behalf of his client and subsequently obtained a settlement from the tortfeasor's insurance carrier. The settlement included payment in full amount to the client's insurance company and the releases obtained and payments made included an amount designated to cover the insurer's subrogation amount. Country Mutual was named as a payee on the check and the amount of the check was exactly equal to the amount of Country Mutual's lien. By contrast, in the case at bar, the release was obtained without a designated amount covering the insurer's subrogation interest. We find that since there was no designation of a subrogee in the release of the claim, the subrogee's interests are not extinguished. See *Home*, 71 Ill. 2d at 215.

¶ 39 Further, defendants rely on *Meyers v. Hablutzel*, 236 Ill. App. 3d 705, 708 (1992), arguing that a subrogee can only enforce those rights which the subrogor could enforce. In *Meyers*, following settlement for an amount well in excess of the subrogation claim and following dismissal of the subrogor's personal injury case, the court held that the subrogee insurer's recovery was limited to recoupment of settlement funds paid to its insured subrogor, and the liability of the defendant tortfeasor was extinguished. In *Meyers*, the plaintiff had already filed suit before the insurer paid the medical expenses and informed the attorney of its subrogation rights and its determination not to hire the attorney. The court found that when plaintiff settled in full with defendant, including the amount subject to subrogation, that settlement barred any further claim by plaintiff or his insurer for damages against defendant arising out of the incident at issue. *Id*. In the case at bar, we find there was no amount designated as to

- 11 -

subrogation claims and defendants were aware of plaintiff's subrogation claims well before Krupa filed his personal injury suit.

¶ 40    The trial court found that the letter from plaintiff allowing power of attorney to Krupa's attorney was dispositive, stating that if plaintiff was displeased with the result, its recourse was to file a claim against Krupa if there were any problems. In response, plaintiff correctly points out that the Illinois Supreme Court rejected this option. "Denied enforcement of its subrogation rights against the real wrongdoer, the insurer must instead seek recovery from its own insured, an obviously unpalatable alternative." *Home*, 71 Ill. 2d at 213. "Thus the tortfeasor and his own liability insurer, if any, escape payment for damage caused by the tortfeasor, while the tort victim is effectively denied payment from his own insurance carrier and from the tortfeasor." (Emphasis omitted.) *Id.* at 213-14. Moreover, plaintiff points out that Krupa's settlement with the defendants did not include the physical damage to his car and thus he did not receive any payment for that damage, precluding plaintiff from receiving reimbursement from Krupa.

¶ 41    It is a fundamental principle of appellate law that when an appeal is taken from a judgment of a lower court, " '[t]he question before [the] reviewing court is the correctness of the result reached by the lower court and not the correctness of the reasoning upon which that result was reached.' " *People v. Johnson*, 208 Ill. 2d 118, 128 (2003) (quoting *People v. Novak*, 163 Ill. 2d 93, 101 (1994)). Furthermore, the record supports plaintiff's position that defendants had knowledge of plaintiff's subrogation claims. For example, the letter to Safeway dated February 26, 2009, stated in relevant part: "We have been informed that you are the insurance carrier for Janet Easterling-Wiggins. Our investigation of this accident establishes that your insured, Janet Easterling-Wiggins, was responsible for this accident. Please accept this letter as notice of our subrogation rights. Should we make payments under our policy, we will be looking to you for reimbursement." Moreover, Safeway acknowledged these facts in its response dated April 24, 2009, where it stated, in relevant part: "This will acknowledge receipt of your subrogation claims. Our investigation is complete, we can settle this claim for $7,147.92." The letter further indicated all offers are pending management approval. Finally it stated "Please be advised that we require a property damage release before issuing payment ***."

¶ 42    Thus, it is undisputed that defendants had notice of plaintiff's subrogation rights prior to the settlement of the insured's suit and the signing of the release. Plaintiff maintains that clearly, the import of this letter is that plaintiff was entitled to its subrogation rights as to property damage. "We accordingly hold that an unlimited release executed by an insured-subrogor for consideration not specifically including an amount designated as covering the insurer's subrogation interest does not bar a subsequent subrogation action by an insurer-subrogee against the tortfeasor, if the tortfeasor or his insurance carrier had knowledge of the insurer-subrogee's interest prior to the release." *Home*, 71 Ill. 2d at 215.

¶ 43                                         CONCLUSION

¶ 44    The judgment of the circuit court is accordingly reversed, and the cause is remanded to the circuit court of Cook County for further proceedings consistent herewith.

¶ 45    Reversed.